[Civ. No. 22334.   Second Dist., Div. Two.   July 7, 1958.]

Estate of ANNE McNALLY LIDDLE, Deceased.   JAMES W. HARVEY, as Administrator, etc., et al., Appellants, v. JOHN F. P. BYRNE et al., Respondents.

Frank S. McGorty, Dorothy E. Handy, George H. Sullivan and Julien R. Bauer for Appellants.

Gerald J. O'Gara and O'Gara & O'Gara for Respondents.

ASHBURN, J.—This is a controversy over the title to 150 shares of stock in California-Portland Cement Company which were left in a testamentary trust for the benefit of Miss Florence McNally during her lifetime and upon her death to go to Edward I. Coffey or, in the event of his death, to his "heirs-at-law." Mr. Coffey predeceased Miss McNally, leaving as his only heir his wife, Kathleen Ann Coffey; she died intestate about six years before the life tenant. The heirs and administrator of the estate of Kathleen Coffey claim the stock, as do certain remote cousins of Mr. Coffey. The latter group prevailed in the trial court and the other claimants appeal.

Kathleen Coffey's heirs are three sisters and "the Estate of Robert P. Keating, deceased," a brother (designated herein as the Keating claimants). The respondents (known as the Byrne claimants) are "in the fifth degree of relationship to said Edward I. Coffey, deceased, to wit, first cousins once removed." The Keating claimants contend that Kathleen Coffey was sole heir of Edward I. Coffey, and that the remainder estate vested in her immediately upon his death and passed to her own heirs when she died intestate. The Byrne claimants argue in effect that the gift to the heirs-at-law of Edward I. Coffey was a class gift whose membership was determinable only at the time indicated for distribution, death of Miss McNally; that Kathleen Coffey was then deceased and they are the only persons who answer the description of heirs of Mr. Coffey at the time of death of Miss McNally on April 4, 1953.

By paragraph Fourth of the will of Anne McNally Liddle, who died October 11, 1942, a trust consisting of 1,000 shares of stock in California-Portland Cement Company was created for the benefit of her sister, Florence McNally, during her lifetime; the will further directed the trustees "upon the death of my said sister to divide and distribute said One Thousand (1000) shares of said stock as follows: . . . ONE HUNDRED FIFTY (150) shares of said stock to go to and belong to

EDWARD I. COFFEY, my Attorney, of San Francisco, California, and the remaining ONE HUNDRED FIFTY (150) shares of said stock to JOHN O'GARA, my Attorney of San Francisco, California. In the event of the death of any of said RICHARD J. BURKE, EDWARD I. COFFEY or JOHN O'GARA the shares of stock allotted to them shall go to their heirs-at-law." It was also provided in said will (paragraph Thirty-Fourth): "I direct that my shares of California Portland Cement Company stock in no event be sold or otherwise disposed of during the life time of my sister." By codicil, testatrix further directed that her trustees were authorized upon the death of Miss McNally to sell, if necessary for payment of debts etc., such number of shares of the cement stock as might be absolutely required for that purpose "and thereupon to divide the remainder of said shares of cement stock among the beneficiaries named in said Fourth paragraph in proportion to the number of shares bequeathed to them by said Fourth paragraph." The trustees have not sold any part of the said shares.

The will and codicils having been duly probated, application was made for partial distribution which was granted by order of May 27, 1943, distributing said cement company stock to the designated trustees "subject to the provisions of decedent's will," with the further direction "that said trustees shall keep, manage and control the corpus of said trust according to the terms, conditions and provisions of the will and codicils of decedent for the term of the natural life of said beneficiary, and also to make ultimate distribution thereof as so provided in decedent's said will." No other or further definition of powers and duties of the trustees was then made.[1]

Upon termination of the trust through the death of Florence McNally, on April 4, 1953, the trustees filed their ninth and final account and petition for distribution pursuant to section 1120, Probate Code. That petition discloses the fact of death of beneficiaries Arthur J. Hawkins and Beatrice Hawkins and alleges the proper distribution to be made of their share; the same is true of the share of deceased beneficiary John O'Gara. Concerning the Coffey interest, it says: "That Edward I. Coffey survived Anne McNally Liddle and predeceased said Florence McNally; that he left surviving his wife, Kathleen Coffey, who subsequently died prior to the death

---

[1]The decree of final distribution makes no mention of the subject matter of the trust.

of said Florence McNally. That said Will provides that distribution is to be made to the heirs-at-law of said Edward I. Coffey; that the heirs-at-law of said Edward I. Coffey and/or Kathleen Coffey are at this time unknown to petitioners who are endeavoring to locate such heirs; that a determination of such heirs, their addresses and the respective share in said trust to which each would be entitled will involve a long and unreasonable delay; that it is for the best interests of all concerned in said trust that distribution be made to all known beneficiaries in said trust and that the shares to the Coffey heirs be retained for distribution until such time as they have been located, identified with certainty and the respective share of each determined.

"It is represented, therefore, that distribution of the balance remaining in said trust estate, should be made as follows: . . . To heirs-at-law of EDWIN I. COFFEY, deceased 15% or 3/20 thereof." The prayer asks, "that a decree be made distributing the balance on hand in said trust estate to the beneficiaries entitled thereto as hereinabove set forth; that said Trustees be directed to retain the share of said trust estate to which Edward I. Coffey would have been entitled had he survived distribution thereof until such time as it has been determined to whom such distribution is to be made." The hearing upon this petition resulted in an order of July 23, 1953, settling the account and ordering distribution, which order, so far as it concerns the Coffey interest, says: "IT IS FURTHER ORDERED that the balance remaining on hand in said trust estate after the payment of fees and closing costs, be distributed as follows: . . . To heirs-at-law of EDWIN I. COFFEY,[2] deceased 15% or 3/20 thereof.

"IT IS FURTHER ORDERED that said Trustees retain the share of said trust estate to which Edward I. Coffey would have been entitled had he survived distribution thereof until such time as it has been determined to whom such distribution is to be made."

This was followed in 1954 and 1955 by the filing of petitions of (1) the Keating claimants, (2) James W. Harvey, as administrator of Estate of Kathleen Ann Coffey, deceased, (3) of the Byrne claimants and (4) certain other claimants,[3]— each seeking a determination of the identity of the persons en-

---

[2]It was stipulated and found that Edwin I. Coffey and Edward I. Coffey were the same person.

[3]All petitions other than those of Harvey, Keating claimants, and Byrne claimants were later dismissed voluntarily.

titled to take the share of Edward I. Coffey. The only difference in the positions taken by Harvey, the administrator, and the other Keating claimants is that Harvey claims the right to possession for purpose of administration and the heirs of Mrs. Coffey seek to by-pass the probate proceeding and to take their shares directly from the Liddle trustees. The petitions having been consolidated for hearing, the result was the decree now on appeal.

The trial judge's ruling was based primarily upon the last quoted paragraph of said order of July 23, 1953. The findings say: "'7. That by said decree of July 23, 1953, said court distributed to the heirs at law of Edward I. Coffey living on April 4, 1953, the trust estate to which Edward I. Coffey, deceased, would have been entitled to receive had he survived the life tenant, Florence McNally. . . . 8. The following persons, petitioners herein, are the only heirs at law of said Edward I. Coffey, deceased, and were the only such heirs at law living on the date of death of said Florence McNally, to wit, April 4, 1953, and on the date of said decree of distribution, July 23, 1953: [Here follow the names of the Byrne claimants]; that the said named persons are the only persons answering the description or constituting the class of heirs at law of said Edward I. Coffey, deceased, described in said decree of distribution made and entered on July 23, 1953.'' The conclusions say that the Keating claimants ''are barred and estopped by said decree of distribution made and entered on July 23, 1953, from claiming or asserting that said [Byrne claimants] are not the sole heirs of Edward I. Coffey, deceased.'' The decree conforms to said findings and conclusions and undertakes to effectuate them. The view that the order of July 23, 1953, renders the issues of this case res judicata is not sustainable.

It will be noted that neither the decree of partial distribution to the trustees nor this order of final distribution of the trust attempts to construe the will with respect to the Coffey bequest. In each instance reference is made directly or impliedly to the terms of the will without any attempt at interpretation. In such circumstances neither of the orders can constitute a final memorial of the intention of the testatrix or the meaning of the will. Each of them leaves the matter open for adjudication after consideration of the will itself (*In re Ewer*, 177 Cal. 660, 663 [171 P. 683]; *Estate of Lockhart*, 21 Cal.App.2d 574, 578-579 [69 P.2d 1001]; *Manning v. Bank of California*, 216 Cal. 629, 637-638 [15 P.2d 746];

*Canfield* v. *Security-First Nat. Bank,* 13 Cal.2d 1, 18-19 [87 P.2d 830]), and in the light of parol evidence (*cf. Paley* v. *Superior Court,* 137 Cal.App.2d 450, 457 [290 P.2d 617]; *Estate of Sargavak,* 41 Cal.2d 314, 319 [259 P.2d 897]; *Estate of Pierce,* 32 Cal.2d 265, 273-274 [196 P.2d 1]) if the occasion therefor arises.

█ So far as the order of July 23, 1953, is concerned it is patent that it cannot operate as res judicata. We again quote the pertinent language: "To heirs-at-law of EDWIN I. COFFEY, deceased 15% or 3/20 thereof.

"IT IS FURTHER ORDERED that said Trustees retain the share of said trust estate to which Edward I. Coffey would have been entitled had he survived distribution thereof until such time as it has been determined to whom such distribution is to be made." The last quoted paragraph, read in the light of the petition, inescapably withholds an adjudication as to the identity of the heirs-at-law of Edward I. Coffey. The use of the phrase "to which Edward I. Coffey would have been entitled had he survived distribution thereof" cannot be held to have decided anything; it is merely descriptive of the subject matter with which the paragraph deals. The concluding words, "until such time as it has been determined to whom such distribution is to be made" reveal an unmistakable withdrawal of that issue from the proceeding. Section 1911, Code of Civil Procedure, says: "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." *Stark* v. *Coker,* 20 Cal.2d 839, 843 [129 P.2d 390]: "[I]t is also true that that only is adjudged in a former judgment which appears upon its face to have been adjudged or which was actually and necessarily included therein or necessary thereto. (Code Civ. Proc., § 1911.) And when it affirmatively appears that an issue was not determined by the judgment, it obviously is not res judicata upon that issue. A judgment is not an adjudication as to matters which the court expressly refrains from determining." To the same effect, see *Estate of Hill,* 149 Cal.App.2d 779, 787 [309 P.2d 39]; *Estate of Wilson,* 147 Cal. 108, 111 [81 P. 313]; *Barnes* v. *Dobbins,* 118 Cal. App.2d 808, 814 [258 P.2d 1112]; *Estate of de Laveaga,* 50 Cal.2d 480, 486 [326 P.2d 129]. The court having erroneously ruled that, as a matter of law and through operation of the doctrine of res judicata, the Byrne claimants are the

heirs-at-law of Edward I. Coffey, it now appears that the question of heirship is an open one upon this appeal.

As a practical matter the ruling in favor of the Byrne relatives would leave the title to this stock hanging *in caelo* during a six-year suspension of the power of alienation.[4]  (*Cf.* Civ. Code, §§ 716, 771.)  Kathleen Coffey died in July, 1947, and the trust did not terminate until the death of Florence McNally in April, 1953.  If the heirs are to be determined as of the latter date (as ruled below), there was no one who could convey good title to the Coffey remainder during that six-year period,—this because of possible fluctuation in the class of pseudo heirs at law.  Such a situation is opposed to the declared policy of this state.

Probate Code, section 28, provides: "Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."  Civil Code, section 694: "A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest."  Probate Code, section 106: ". . . Technical words are not necessary to give effect to any species of disposition by a will; but technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense."  Probate Code, section 108: "A testamentary disposition to 'heirs,' 'relations,' 'nearest relations,' 'representatives,' 'legal representatives,' 'personal representatives,' 'family,' 'nearest (or next) of kin' of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of Division II of this code.  Such terms are used as words of donation, and not of limitation, when the property is given to the person so designated, directly, and not as a qualification of an estate given to the ancestor of such person."  ██  *Estate of Stanford,* 49 Cal.2d 120, 124 [315 P.2d 681]: "In construing the lan-

---

[4] Such a construction of this will might render the class gift void as violative of the statutory inhibition upon suspension of power of alienation,—for Miss McNally might have lived more than 25 years (the period specified in Civ. Code § 715, in July, 1947) after Mrs. Coffey's death, the event creating the suspension.  See 38 Cal.Jur.2d, § 21, p. 470; Restatement of Law of Property, § 371, p. 2160.

guage of a bequest, such as we have here, the primary common law rule in favor of early vesting of title in remaindermen and the preference for vested rather than contingent remainders is firmly established in this state.'' At page 127: '' 'All these sections [various sections of the Civil Code] show the unmistakable intention of the statutory law to declare that a devise or bequest shall vest at the testator's death unless some other intention is expressed in the will. This policy has been recognized and approved by the California decisions. . . .' ''

'' 'The word 'heirs' is a technical term, and in its 'technical sense' one's 'heirs' means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statute relative to succession.'' (*Estate of Newman*, 68 Cal.App. 420, 425 [229 P. 898].) Hence, section 106, Probate Code, requires that the phrase ''heirs at law'' be construed as referring to the person or persons who would take Mr. Coffey's property by inheritance upon his dying intestate.

The general rule is thus stated in the Newman case, *supra*, at page 424: ''It is a general rule of testamentary construction, so universally recognized as to render unnecessary a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder is given by will, is to be ascertained at the death of the testator.'' It is further said, at page 431: ''Unless the will affords clear and unequivocal evidence to the contrary, all doubts will be resolved in favor of the heirs at law at the time of testator's death.''

Unless the Liddle will furnishes evidence to the contrary it must be interpreted as referring, when using the term ''heirs-at-law'' to Mrs. Kathleen Coffey who was during her lifetime the sole heir apparent of Mr. Coffey. From and after his death on June 20, 1943, he could not have any other heirs in fact; the book was closed. If the Byrne relatives take his share of the stock they must do so as a class of pseudo heirs whose membership is determined at the time of distribution upon the death of Miss McNally, and this can be true only as a result of some affirmative evidence found in the will to the effect that such was the testatrix' desire. In the Newman case, *supra*, which was cited with approval at

page 129 of the Stanford decision, *supra,* the testator provided for distribution upon termination of a trust "to my heirs at law" and it was held "that the words 'heirs at law wherever and whoever they may be according to the laws of succession of the State of California' mean those who are the heirs of Charles Newman at the moment of his death." (P. 431.)

*Dickey* v. *Walrond,* 200 Cal. 335 [253 P. 706]. The will and decree provided that upon termination of a certain trust "the estate in fee should pass as follows: An undivided one-half to his wife and an undivided one-fourth to each son, qualified, however, by the following language, to wit: 'In the event of the death of my said wife during the life of this trust, then the undivided one-half part that would otherwise have gone to her shall go to her heirs at law.' " (P. 337.) It was held that this meant heirs determined as of the time of the wife's death. At page 339, the court said: " 'The word "heirs" means the persons who would be entitled to succeed at his death to this estate in case of intestacy, by virtue of our statutes relative to succession.' [Citations.] 'The "heirs" of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will.' [Citations.] The husband under our law is, of course, an heir of his deceased wife." At page 340, quoting from *Estate of Watts,* 179 Cal. 20 [175 P. 415]: " 'The word "heirs" is a technical term, and is used to designate "the persons who would by the statute succeed to the real estate (or, in California, estate of any kind) in case of intestacy." (*Clarke* v. *Cordis,* 4 Allen (Mass.), 446, 480.) "The 'heirs' of a person," said this court in *Hochstein* v. *Berghauser,* 123 Cal. 681, 687 [56 P. 547, 549]), "are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will." ' " In connection with this Dickey case it is to be observed that Mr. Coffey took a vested fee upon condition subsequent that he outlive the life tenant, Florence McNally. We think this conclusion is required by application of *Estate of Stanford, supra,* to the facts before us. That opinion also seems to indicate that Kathleen Coffey, as the sole heir of Edward I. Coffey, likewise took a future interest which vested upon the death of Mrs. Liddle, or certainly not later than the death of Edward I. Coffey, with enjoyment of possession postponed until termination of the trust upon the death of Florence McNally; that said estate was transmissible by her through death or otherwise.

*Dickey* v. *Walrond, supra,* held that the wife's estate was a

contingent one, saying at page 344: "What was her estate, if any, after the death of her husband, independent of the trust provisions? Plainly, it was a fee if she survived the termination of the trust period and nothing if she did not. In other words, it was an estate on condition precedent as provided in sections 709 and 1346 of our Civil Code. . . . Here it is perfectly plain that with reference to the trust estate, the widow had what is known as a contingent remainder and so did her heirs at law." If it were held at bar that Kathleen Coffey took a contingent estate at the death of testatrix Liddle, that fact did not alter the further one that the contingency was fulfilled when she survived her husband, and what was previously a contingent remainder (if it was one) became vested in her as his sole heir at law. (*Cf.* 33 Am.Jur. § 71, p. 532; 22 Cal.Jur. § 14, p. 810.)

Of course, a bequest to heirs of a designated person is a gift to a class (*Estate of Newman, supra,* 68 Cal.App. 420, 424; *Estate of Newman,* 146 Cal.App.2d 780, 784 [304 P.2d 748]; 57 Am.Jur. § 1262, pp. 834-835), and one of the recognized incidents of such a gift is that the class closes when increase in the number of its members becomes an impossibility. "A class is said to close when it can no longer increase. Closing of the class is concerned with that time after which no more members can be admitted. It does not refer to the time after which the membership cannot decrease." (Simes & Smith, Law of Future Interests, Second Edition, § 632, p. 67.)[5]

Section 106 Probate Code and the cases above quoted require technical terms in a will to be construed in a technical sense "unless the context clearly indicates a contrary intention." Examination of Mrs. Liddle's will discloses no such contrary intention. On the contrary, paragraph Thirty-Second thereof recites ownership of 4800 acres of Kings County land then under lease to Associated Oil Company, and gives: "An undivided one-twentieth (1/20) to EDWARD I. COFFEY, and KATHLEEN COFFEY, in joint tenancy with the right of survivorship." A codicil states that testatrix no longer owns said 4,800 acres but does own oil, gas and mineral rights in several other par-

---

[5] The Stanford case holds that the interest of a class member who dies before distribution does not lapse or augment the shares of the other members; the heirs or legatees of the deceased member take her share. It was to make this rule clear that the court, at page 129, overruled *Estate of Clark,* 64 Cal.App.2d 636 [149 P.2d 465]. In any event the heirs of Mrs. Coffey could not lose all interest in the trust estate.

cels in Kings County which she gives to her trustees to lease and manage, the proceeds of sales or leases to be divided among the corporations and persons named as devisees in paragraph Thirty-Second of the will and in the proportions named therein. It is evident that testatrix had Mrs. Kathleen Coffey in mind as an object of her bounty, for the realty (or its proceeds) was to go to her automatically upon the death of her husband by virtue of her status as surviving joint tenant. No hint of a desire that she should not succeed her husband, Edward, in ownership of the shares of stock appears in the will.

Looking to the authorities generally applicable to the instant situation, it appears that the preponderance of cases uphold the right of Mrs. Coffey to succeed to the husband's share of the trust. Restatement of the Law of Property, section 308, page 1706, says: ''When a limitation is in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in favor of other groups described by words of similar import, and the persons who come within the term employed to describe the conveyees are to be determined by a statute governing the intestate succession of property, then the statute is applied as of the death of the designated ancestor, unless an intent of the conveyor to have the statute applied as of some other date is found from additional language or circumstances.'' Comment a, at page 1707: ''a. *Rationale.* A statute which prescribes the rules applicable to intestate succession operates by ascertaining the takers thereunder at the moment of the death of the person who has died intestate. When such statute is employed to determine who comes within the descriptive term employed to designate the conveyees under a conveyance, it is reasonable to infer that the conveyor intended the statute to be similarly applied. It is possible for the conveyor to provide that the statute should be applied as if the ancestor died at a time either before or after his actual death. Such possibility is recognized in the statement incorporated into the rule stated in this Section that an intent of the conveyor to have the statute applied as of some other date may be found from additional language or circumstances.'' ██ Section 309, page 1723: ''When a limitation is made in favor of the 'heirs,' 'heirs of the body,' 'next of kin' or 'relatives' of a designated person, or in other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the interest of a member of the group ascer-

tained by the application of a statute governing the intestate succession of property at the time required by the rule stated in section 308 is not subject to any requirement of survival to a date later than the time of the application of such statute.'' The argument that a different rule applies to the case of Mrs. Coffey because her gift is a substitutional one cannot prevail. The Restatement says in Comment f on section 309, at page 1729: ''The fact that the gift to the described group is substitutional does not cause the postponement of the application of the statute to a period subsequent to the death of the designated ancestor.''

Simes and Smith, Law of Future Interests, second edition, section 732, page 200: ''Normally, when a gift has been made to the 'heirs' or 'next of kin' of a named individual, the donor has said in effect that he wants the property distributed as the law would distribute it if the named person died intestate. Accordingly, the normal time for applying the statute of descent or distribution is at the death of the named individual. This is, however, merely a rule of construction, and if the testator or grantor manifests an intention that the statute be applied either at an earlier or a later time, such intention will be given effect.''

Volume 96, Corpus Juris Secundum, section 695(5), page 46: ''The words 'heirs,' 'next of kin,' 'legal representatives,' or the like may be construed in two senses, either in their primary sense of those falling within the class at the date of the testator's death or their secondary or artificial sense of those answering the description at a date or event subsequent on the assumption that the testator died at such later date.'' At page 50: ''Ordinarily, a gift to the 'heirs,' 'next of kin,' or the like of a person other than the testator will refer, for the determination of the class, to the death of such other, in the absence of a clearly manifested intent to the contrary in the will; the rule applies whether the gift is immediate or is one taking effect in the future.

''The same general rule as applies to a gift to the testator's own heirs, next of kin, or the like has been said to be applicable where the heirs or next of kin are of another than the testator, in which case the rule is that the gift refers, for determination of the class, to the death of such other unless the context of the will clearly manifests a different intent.''

There is a divergence in the authorities, as might be expected. (See 57 Am.Jur. § 1290, p. 854; § 1369, p. 908; 75

A.L.R. 800; 33 A.L.R.2d 244, 256-261.) But the rule stated in section 309 of the Restatement seems sound in principle and it is consistent with *Estate of Newman, supra,* 68 Cal. App. 420, above quoted.

Professor Ferrier, discussing *"Gifts to 'Heirs' in California,"* in 26 California Law Review 413, says at page 429: "Again, where the gift is that of a remainder to the heirs of a living person immediately following a life estate to such person himself, the heirs will usually be ascertained at the death of the ancestor. This is so because at the testator's death there are no 'heirs' (in the primary sense) of the living life tenant; and the date of their ascertainment at the latter's death coincides with the date when they are entitled to possession. Where the two dates do not coincide, however, are the heirs to be determined as of their ancestor's death or as of the time of distribution? No California case has apparently presented the precise problem. In a Massachusetts case it was held that the heirs should be determined at the ancestor's death, although the possession was postponed until the termination of an intermediate life estate. The result accords with the primary meaning of the term and the particular situation seems to have called for no departure from that meaning." Commenting upon *Estate of Easter,* 24 Cal.2d 191 [148 P.2d 601], (which was distinguished in *Estate of Stanford, supra,* at page 130, upon the ground that it interpreted the decree of distribution and not the will) the same author says, in 32 California Law Review, at page 322: "[T]he problem is thrown back to an interpretation of the will. Here the widely recognized rule of construction in favor of vesting, codified by Probate Code section 28, together with the provision of Probate Code section 108, regarding the effect of a testamentary disposition to 'heirs,' leaves no reasonable alternative than to conclude that the gift to the heirs vested in interest at the testator's death and that their identity must therefore be determined at the same time."

We conclude that it was error to hold that the Byrne claimants were the heirs at law of Edward I. Coffey. Upon the record before us it appears as matter of law (see *Estate of Norris,* 78 Cal.App.2d 152, 159 [177 P.2d 299]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]) that Mrs. Kathleen Coffey had an indefeasible fee interest in said remainder upon the death of her husband. This she took under the terms of the Liddle trust, not by inheritance from Mr. Coffey or by virtue of any proceedings in his estate. As her interest

in the stock was unconditional and indefeasible, it passed when she died intestate to her own heirs-at-law, passed through inheritance of her estate, not as part of that of Mrs. Liddle or that of Mr. Coffey. Exclusive jurisdiction over her estate, including the determination of her heirs and distribution of the property, resides in the probate court having charge of her estate (see 20 Cal.Jur.2d § 28, p. 61; *Colden* v. *Costello,* 50 Cal.App.2d 363, 370 [122 P.2d 959]).

Appellant James W. Harvey is the qualified and acting administrator of the estate of Mrs. Coffey, and it follows that her share of the stock must go to her administrator subject to administration for the benefit of her creditors and ultimate distribution to her heirs in the probate proceeding pertaining to her estate. Hence, it does not go directly to the Keating claimants other than Harvey.

Considerable discussion has centered upon an alleged agreement of compromise between Harvey as administrator of the estates of Edward I. Coffey and Kathleen Ann Coffey, on the one hand, and the Byrne claimants on the other. The record shows that Harvey as administrator of the Kathleen Coffey estate procured in the San Francisco probate proceeding covering that estate an order authorizing him to make a compromise of the claims of the Kathleen Coffey estate to the said trust remainder for the sum of $20,000, to be paid him by the Byrne claimants. The individuals named herein as Keating claimants did not join therein or consent thereto. Later he obtained an order from the same court, which recited that the former order "neither enlarged nor abrogated the regular powers of the Administrator of said Estates, but merely afforded him additional protection from liability in the event he should effect the compromise," and "it now appearing that it is not to the best interests of the two above-entitled Estates and the persons interested therein that the Administrator should effect the said proposed compromise"; it authorized the administrator to exercise his own discretion and, if so advised, to prosecute the proceedings filed by him in the Liddle estate. Appeal was taken by the Byrne claimants and others from that order and it was affirmed in an opinion of Division Two of the District Court of Appeal, First Appellate District, filed June 11, 1958, *Estate of Coffey,* 161 Cal.App.2d 259 [326 P.2d 511]. Time for action upon a petition for hearing in the Supreme Court has not expired. The trial court in the proceeding at bar included in its decree a conditional approval

of the compromise agreement, but the conditions were not fulfilled and therefore the following portion of the decree becomes applicable: "The Court expressly refrains from making any decree concerning the rights or obligations of the parties with respect to that certain agreement of March 28, 1955, more fully described in said findings between the Byrne petitioners and said Harvey as administrator of both said estates of Edward I. Coffey, deceased and Kathleen Ann Coffey deceased, in the event the conditions set forth above are not fulfilled, leaving to all parties without prejudice by this decree their right to pursue in any way they see fit their respective remedies for the enforcement of said agreement, or their rights to appeal from the decree of this court." The matter should remain open so far as we are concerned. It is conceivable that a reversal of the said decision of the First District Court of Appeal may legitimately affect the ultimate disposition of the cause now before us, but there is no occasion now to make any direction concerning the matter.

Other arguments presented in the briefs require no specific discussion.

When deciding this case the trial judge first made a minute order and then signed formal findings and decree. Appellants have appealed from both the minute order and the decree. That minute order concluded with these words: "Messrs. O'Gara and O'Gara, counsel for Petitioner Byrne, et al, to prepare findings and order, serving same on other parties," thus calling for an "attorney order"; and hence it is not appealable. (*Herrscher* v. *Herrscher,* 41 Cal.2d 300, 304 [259 P.2d 901].)

The appeals from the minute order are dismissed. The decree is reversed with instructions to the lower court to take such further proceedings herein as may be necessary or proper but not inconsistent with the views herein expressed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied August 1, 1958, and respondents' petition for a hearing by the Supreme Court was denied September 3, 1958.