[Civ. No. 15242. Fourth Dist. Div. Two. Nov. 21, 1975.]

Estate of M. M. McCALLEN, Deceased.
WILLIAM H. H. McCALLEN, as Co-executor, etc., et al.,
Petitioners and Respondents, v.
SANDRA LEE McCALLEN KOOKEN et al.,
Objectors and Appellants;
CHARLES HUNTER McCALLEN, Claimant and Respondent.

## Counsel

Phillip Singer for Objectors and Appellants.

Portigal & Hammerton, James M. Dodds and Harwood & Adkinson for Petitioners and Respondents and for Claimant and Respondent.

## OPINION

TAMURA, J.—Decedent (M. M. McCallen) left a will in which he declared it was his intention that his children share equally in one-half of the residue of his estate and that their children share per stirpes in the remainder. The will directed distribution of the residue in trust to carry out the testator's intentions. Decedent left four children, one of whom had three children at the time the testator died, but later adopted a fourth child. The ultimate issue presented by this appeal is whether the adopted child is entitled to take as a beneficiary under the testamentary trust.

The pertinent facts which are not in dispute are as follows:

Decedent died on January 26, 1966, and his will was thereafter duly admitted to probate. The will directed that after payment of costs of administration, just debts, taxes and all specific bequests, the residue of the estate be distributed in accordance with article "EIGHTH." The first two paragraphs of that article read as follows: "EIGHTH: I declare that as of the date of this will all of my four children have issue, and that it is my intention that generally, subject to the depletion resulting from payment of principal, that my children shall share equally in one-half of the residue of my estate, and their children shall share per stirpes in the remainder after distribution to my children.

"After the payment of all specific bequests, taxes, debts, and expenses of administration, and at such time as my estate shall be ready to be distributed, I give and devise, and for the purpose of distribution, direct, that the residue and remainder shall be divided into as many shares as there are children of mine then living, and children of mine then deceased who have left lawful issue who are then living, and shall be distributed as follows: . . ."

In substance the ensuing provisions direct distribution of a portion of each child's share directly to him or her, depending upon the child's age, with the remainder to be distributed to named trustees to be held for the benefit of the child and his or her issue. Under the terms of the trust,

one-half of each share will have been distributed to each child by the time he or she becomes 40 and the remaining one-half will remain in trust for the issue of that child.

Decedent left four children, including William H. H. McCallen. At the time of decedent's death, William H. H. McCallen had three children: Sandra Lee, Cynthia Lou and William Clair. On January 25, 1972, he adopted a fourth child, Charles Hunter.[1]

In August 1973, the executors filed a third account and petition for partial distribution of the residue in accordance with article "EIGHTH" "in the fractions and divisions and to the persons individually, or in their fiduciary capacity, all as more particularly set forth in Exhibit 'B' " attached to the petition. The exhibit listed the names and ages of decedent's four children and their issue, including the following:

"B. WILLIAM H. H. McCALLEN, age 42, born December 8, 1930; three children, SANDRA LEE McCALLEN, age 23, born May 18, 1950; CYNTHIA LOU McCALLEN, age 20, born March 8, 1953; and WILLIAM CLAIR McCALLEN, age 12, born September 21, 1960." The name of the adopted child was not included.

Exhibit "B" then provided that in accordance with article "EIGHTH" the residue of the estate or the portion to be distributed should be divided into four equal shares, denominated "A," "B," "C," and "D." Share "B" was directed to be distributed as follows:

"B. WILLIAM H. H. McCALLEN AND CHILDREN SHARE:

"One-half of said share shall be distributed outright to WILLIAM H. H. McCALLEN and the remaining one-half of that share shall be distributed to the hereinafter named trustees, in trust, for the benefit of the children of WILLIAM H. H. McCALLEN." It was further provided that Sandra Lee having attained the age of 21 in 1971, the trustees "shall distribute an undivided one-third of Share B directly to SANDRA LEE McCALLEN" and that when each issue of William H. H. McCallen reaches the age of 21 years "the trustees shall distribute to said issue that portion of the remainder of said share based on the principle of representation (excluding from computation previously distributed portions)."

---

[1]Charles Hunter was born on January 23, 1971.

In October 1973, the court approved the third account and ordered distribution of a portion of the residue in accordance with the petition.[2]

In August 1974, the executors filed their fourth and final account and petition for final distribution. The petition represented that, subject to certain deductions, the value of the residue available for distribution totaled $1,032,141.30 and listed the names and addresses of all heirs, devisees and beneficiaries, including the name of Charles Hunter McCallen, the adopted child of William H. H. McCallen. The petition requested approval of the distribution of the residue of the estate in accordance with article "EIGHTH" of the will as set forth in an attached exhibit. The exhibit provided for the division of the residue into four equal shares and for the further division and distribution of each share in the manner set forth in the earlier Exhibit "B" of the third account except for the addition of the name of Charles Hunter McCallen as one of the beneficiaries of Share "B."

The three natural children of William H. H. McCallen (hereinafter objectors) objected to the petition for final distribution on two grounds: (1) The testator did not intend the adopted child of William H. H. McCallen to take as a residuary beneficiary of Share "B" and (2) the order for preliminary distribution constituted a final and conclusive determination that the objectors were the only issue of William H. H. McCallen entitled to participate as beneficiaries of Share "B."

Following hearing the trial court denied the objection, approved the final account, and decreed final distribution as prayed. Objectors appeal only from that portion of the decree of final distribution relating to Share "B."

Objectors contend: (1) The order for preliminary distribution was conclusive as to the persons entitled to take as beneficiaries of Share "B" and (2) the beneficiaries entitled to take under the testamentary trust must be ascertained as of the date of decedent's death. We have concluded that neither contention has merit and that the order should be affirmed.

## I

Objectors contend that since the order for preliminary distribution sets out the specific terms of the testamentary trust and the names of

---

[2]The assets proposed to be distributed consisted of the following: 150 shares Genesco, Inc.; 150 shares Standard Systems; 200 shares U. S. Natural Resources; 1,600 shares of Signal Companies.

the beneficiaries thereunder and since that order has long since become final, the court was bound to decree final distribution of the residue in trust only in the specific manner and for the benefit of those named in the preliminary order. The contention lacks merit.

■ In this state a decree of final distribution constitutes a conclusive construction of the will as against all interested parties, including beneficiaries of a testamentary trust. (*Estate of Van Deusen,* 30 Cal.2d 285, 289-290 [182 P.2d 565]; *Estate of Loring,* 29 Cal.2d 423, 427 [175 P.2d 524]; *Estate of Page,* 254 Cal.App.2d 702, 706-707 [62 Cal.Rptr. 740]. Prob. Code, § 1021.[3] See Note, *Construction of a Will as Res Judicata,* 63 Harv.L.Rev. 504, 507-508.) However, unless heirship is specifically in issue, an order for preliminary distribution is conclusive only as to the rights of all persons claiming an interest in the property distributed thereunder. (Prob. Code, § 1003[4]; *Estate of Kearns,* 129 Cal.App.2d 832, 839 [278 P.2d 85]; *Estate of Ampusait,* 131 Cal.App. 533, 537-538 [21 P.2d 691]. See *Estate of Toler,* 49 Cal.2d 460, 467 [319 P.2d 337]. 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 488, p. 5916; 2 Cal. Decedent's Estate Administration (Cont. Ed. Bar) § 32.25, pp. 1283-1284, § 32.68, pp. 1304-1305; 2 Condee, Probate Court Practice, § 1702, pp. 507-508. See Note, *Construction of a Will as Res Judicata, supra,* 63 Harv.L.Rev. 504-508.) The Probate Code sections permitting preliminary distribution were designed to encourage early distribution of property to legatees whenever it can be accomplished without jeopardizing the rights of others interested in the estate. *(Estate of Toler, supra.)* The rule limiting the conclusiveness of an order for preliminary distribution to rights in the assets distributed thereunder is consistent with that policy. ■ Of course, where the construction of a will has been litigated and determined in such proceeding, that determination is res judicata and controls the final decree of distribution. (*Estate of Carothers,* 168 Cal. 691, 694 [144 P. 957]; *Estate of Spreckels,* 165 Cal. 597 [133 P. 289]. See *Estate of Ampusait, supra,* at pp. 539-540.)

■ Applying the foregoing principles to the present case, the order for preliminary distribution was conclusive only as to the rights in that

---

[3] Probate Code section 1021 provides: "In its decree, the court must name the persons and the proportions or parts to which each is entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree, when it becomes final, is conclusive as to the rights of heirs, devisees and legatees."

[4] Probate Code section 1003 provides: "The delivery in accordance with the order [for preliminary distribution] of the court is a full discharge of the executor or administrator in this State, in relation to all property embraced in the order and when the order becomes final it binds and concludes all parties in interest."

portion of the residue distributed thereunder.[5] Heirship, more specifically the rights of the adopted child of William H. H. McCallen, was not in issue in the proceeding for preliminary distribution.[6] The order did not adjudicate the right of the adopted child to take as a beneficiary of the residue distributed in trust as Share "B." ■ As aptly stated in *Estate of Ampusait, supra,* 131 Cal.App. 533 at page 538: "[B]ut none of the cases cited by appellants go to the extent of holding, as they argue, that a decree rendered in such a proceeding [for preliminary distribution] is controlling upon the issue of heirship at the time of final distribution, as against those heirs who, like the respondent, were unaware of the proceeding on partial distribution, were not parties to it, and whose existence was not known to the court at the time such proceeding was heard and determined, and consequently whose claims were never before the court to be considered or passed upon. And manifestly, to hold that under the foregoing conditions a rightful heir is precluded from asserting his or her right of inheritance on final distribution would necessarily violate some of the fundamental principles upon which the doctrine of *res adjudicata* is founded."

The cases cited by objectors do not compel a contrary conclusion. *Estate of O'Connor,* 158 Cal.App.2d 187 [322 P.2d 616], merely held that where the terms of the will were construed and the validity of the testamentary trust was established at the hearing on the petition for preliminary distribution, those determinations were conclusive. Nor does *Estate of Page, supra,* 254 Cal.App.2d 702, support objectors' position. In that case the preliminary order authorized distribution of virtually the entire estate. The court quite properly concluded: "There having been no appeal from that preliminary decree of distribution, it became final and controls the disposition of *all the property distributed* to the trustees under its terms." (254 Cal.App.2d 702, at p. 707; italics supplied.)

■ We conclude that the order for preliminary distribution did not preclude the trial court from determining that the adopted child was entitled to participate as a beneficiary of the residue distributed to the trustees under the testamentary trust.

---

[5]The value of the assets distributed under the preliminary order was but a small percentage of the undistributed residue. The appraised value of the shares of stock distributed under that order was $60,375 whereas the value of the residue remaining thereafter was $1,032,141.30.

[6]Probate Code section 1000 permits a petition for preliminary distribution to be filed by the executor or administrator or any heir, devisee or legatee. In the case at bench, the petition was filed by the executors, not by an heir, devisee or legatee.

## II

Thus the crucial issue is whether the adopted child of William H. H. McCallen is a beneficiary under the terms of the will.

Objectors urge that under Probate Code section 28 testamentary dispositions are presumed to vest at the testator's death and that therefore the identities of beneficiaries under the testamentary trust must be ascertained as of that date.[7] Since Charles Hunter was not an adopted child of William H. H. McCallen at the testator's death, he cannot, so the argument goes, be a beneficiary under the testamentary trust. We are unpersuaded.

The right of the adopted child to take turns on whether the gift to the issue of decedent's children constituted a gift to a class and, if so, whether the persons comprising the class were intended to be determined as of a date subsequent to the testator's death.

A gift to a class has been defined as a gift of an aggregate sum to a group of persons uncertain in number to be ascertained at a future time, all to take in some definite proportion, the amount of each share being dependent upon the ultimate number in the class. (*Estate of Henderson,* 161 Cal. 353, 360 [119 P. 496]; *Estate of Murphy,* 157 Cal. 63, 67 [106 P. 230]; *Estate of Clark,* 64 Cal.App.2d 636, 641 [149 P.2d 465] [overruled on another point in *Estate of Stanford,* 49 Cal.2d 120, 129 (315 P.2d 681)].) In seeking to ascertain whether a gift is to a class, the paramount consideration is the intention of the testator as derived from the will; the fact that there will probably be a fluctuation in the number of beneficiaries differentiates a class gift from a bequest to individuals; and unless a contrary intent appears, the inference to be drawn from the use of the terms "children," "issue," "descendants," etc. is that a gift to a class is intended. (*Estate of Henderson, supra,* at pp. 360-361; *Estate of Doyle,* 202 Cal.App.2d 434, 439-441 [21 Cal.Rptr. 123]; *Estate of Haney,* 174 Cal.App.2d 1, 11-12 [344 P.2d 16]; *Estate of Clark, supra.*)

In the case at bench neither party introduced any extrinsic evidence in the court below concerning the meaning of the language used by the testator. Consequently, it was solely a judicial function to construe the will and it becomes our function as a reviewing court to make an independent determination of the meaning of the will. (*Parsons*

---

[7]Probate Code section 28 provides: "Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."

v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]. See *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].)

The first paragraph of article "Eighth" of decedent's will expresses the testator's general intention to leave one-half of the residue of his estate to "my children" and that "their children" share per stirpes in the remainder. The ensuing paragraph—the dispositive provision—provides that after payment of the specific bequests, taxes, debts and expenses of administration "and at such time as my estate is ready to be distributed, I give and devise, and for the purpose of distribution, direct, that the residue and remainder shall be divided into *as many shares* as there are children of mine then living, and children of mine then deceased who have left lawful issue who are then living, and shall be distributed as follows: . . ." (Italics supplied.)

The foregoing provisions of the will satisfy the definition of a class gift. The testator refrained from naming those who were to take and instead designated two classes: His "children" and "their children"; an aggregate sum was bequeathed to each class, the members to take in definite proportions; and the share of each is made dependent on the ultimate number in the class. The gift to the issue of decedent's children was manifestly a gift to a class.

Objectors maintain that membership in the class must be determined as of the date of the testator's death pursuant to Probate Code section 28. ■ However, the statutory presumption that testamentary dispositions vest at the testator's death is rebuttable and may be overcome by terms of the will indicating a contrary intention. (*Estate of Welch,* 83 Cal.App.2d 391, 396 [188 P.2d 797].) ■ Accordingly, Probate Code section 123 provides: "A testamentary disposition to a class includes every person answering the description at the testator's death; but when the possession is postponed to a future period, it includes also all persons coming within the description before the time to which possession is postponed. A child conceived before but born after a testator's death, or any other period when a disposition to a class vests in right or in possession, takes, if answering to the description of the class."

In the present case the presumption contained in Probate Code section 28 is rebutted by the terms of the will. In the second paragraph of article

"EIGHTH," the testator provided that "*at such time as my estate shall be ready to be distributed,* I give and devise, and . . . direct" that the residue be divided into "as many shares as there are children of mine *then* living" and "children of mine *then* deceased who have left lawful issue who are *then* living." (Italics supplied.) The foregoing language manifestly indicates the testator's intent that the persons comprising the class designated as "their children" and "lawful issue" are to be ascertained at such time as the estate is ready to be distributed. The class therefore includes all persons coming within the description "lawful issue" at the time the estate is ready for distribution. (Prob. Code, § 123.)

Objectors contend that the second paragraph of article "EIGHTH" pertains only to decedent's children, not to their issue. It is urged that the paragraph indicates only that the testator intended that membership in the class comprising *his* children be determined as of the date the estate is ready for distribution. The contention lacks merit. Under the express provisions of that paragraph, if William H. H. McCallen had died before the estate was ready for distribution, his share would have been required to be distributed in trust for the benefit of his "lawful issue who are *then* living." This clearly indicates that the testator intended all "lawful issue" of his children in existence "at such time as [the] estate is ready to be distributed" to participate as beneficiaries under the testamentary trust.

■ The terms "children," "heirs" and "lawful issue" in a will may include children who have been adopted after the testator's death. (*Estate of Heard,* 49 Cal.2d 514, 518 [319 P.2d 637].) ■ Nothing in the will indicates that the testator intended to exclude adopted children. In such circumstances, it must be presumed that the testator intended his will to be construed in conformity with the law and public policy of this state that an adopted child enjoys the same status as a natural child. (*Estate of Heard, supra,* at p. 522; *Estate of Stanford,* 49 Cal.2d 120, 135 [315 P.2d 681]; Prob. Code, § 257.[8])

---

[8]Probate Code section 257 provides: "An adopted child shall be deemed a descendant of one who has adopted him, the same as a natural child, for all purposes of succession by, from or through the adopting parent the same as a natural parent. An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption, nor does such natural parent succeed to the estate of such adopted child, nor does such adopted child succeed to the estate of a relative of the natural parent, nor does any relative of the natural parent succeed to the estate of an adopted child."

## CONCLUSION

We conclude that since Charles Hunter was a "lawful issue" of William H. H. McCallen as of the date of distribution, he was entitled to participate as a beneficiary of the testamentary trust of Share "B."

The order of final distribution is affirmed.

Kerrigan, Acting P. J., concurred.

A petition for a rehearing was denied December 9, 1975, and appellants' petition for a hearing by the Supreme Court was denied January 28, 1976.