64 Cal.App.2d 636 (1944)
Estate of J. ROSS CLARK, Deceased. ROBERT MILLER JACKSON, a Minor, etc., et al., Appellants,
v.
LAURA MILLER WALDSMITH et al., Respondents.
Civ. No. 14361. 
California Court of Appeals. Second Dist., Div. Two. 
May 31, 1944.
 E. Everett Bennett, Edward C. Renwick and Arnold Praeger for Appellants.
 Newlin & Ashburn and A. W. Ashburn for Respondents.
 MOORE, P. J.
 The question for decision is whether a beneficiary of a trust is vested with an indefeasible equitable title to a share of the income and corpus where the decree creating the trust directed payment to be made to a class consisting of a nephew and his surviving lawful issue, the perpetuity of the interest of each of the three in any installment of income or principal being conditioned upon the survival of himself or of his lawful issue to the time of such payment.
 The trust estate of J. Ross Clark was by decree of final distribution distributed to the testamentary trustees on January *639 7, 1929. The chief beneficiaries of the trust were Miriam Clark and J. Ross Clark, II, widow and grandson of the testator. The trust was to continue until J. Ross Clark II should attain the age of 40 years, or until the death of both Miriam and grandson, if both events should occur before the boy should attain the age of 40 years. Having authorized the payment of 75 per cent of the income of the trust to the widow and the grandson, section 1 (c) of the decree of distribution provides that after making certain designated expenditures the remaining 25 per cent of the net income of the estate shall be divided into five shares, five per cent for each of testator's three living sisters and five per cent for the children of his deceased sister, Margaret Miller and five per cent for the grandchildren of his deceased sister, Sarah Bonner. Margaret's five children included Walter C. Miller, who during his lifetime received the income from one per cent of the entire trust estate. The same section, anticipating the possible death of any one of the collateral kin, provided that if any of those named should be deceased at the time such income shall be payable, then the share of such deceased "shall be paid to the surviving lawful issue of such deceased. ... If any of said sisters, nephews, niece, grandnephew or grandniece shall be deceased at the time such income would be payable to her or to him, leaving no lawful issue, then the portion of said income which would be payable to such sister, nephew, niece, grandnephew or grandniece, shall be held and paid by said trustees to the then survivors of the beneficiaries named in this section, in the proportions specified therein calculated as between such survivors, and excluding from such calculation the beneficiary dying without lawful issue."
 Walter C. Miller deceased on October 31, 1935, leaving as his lawful issue one son and two daughters, to wit, Walter C. Miller, Jr., Margaret Miller Jackson, and Laura Miller Waldsmith. Each of these children became entitled to, and did, receive one third of the portion of the income from the trust that had gone to their father. On July 4, 1942, Mrs. Jackson, who had become Mrs. Dorstewitz, died without leaving issue of her body. However, both her brother Walter and her sister Laura survived her. Also, she left as her legal heirs her husband and two adopted children, Robert and Sue Jackson, who were not in existence at the date of the *640 Clark will. Neither were they in contemplation at that time, nor had they been adopted by Margaret at the date of the decree of final distribution.
 Such was the situation that confronted the trustees when they petitioned the court below for instructions as to (1) whether the interest of Margaret was forfeited at her death which had occurred prior to the termination of the trust; (2) whether the adopted children of Margaret should receive the share of the income from, and principal of, the trust estate which would have gone to Margaret but for her death; or (3) whether it should now go to Walter C. Jr. and Laura who, by their answer, claimed that as "sole surviving lawful issue" of Walter C. Miller they are entitled to receive the entire income from the one per cent of the trust estate formerly enjoyed by their father. The Jackson children and the personal representative of Margaret as contestants alleged in their answers that upon the death of Mr. Miller the corpus and the income of the trust estate vested indefeasibly in his three children and that upon Margaret's death her interest in the corpus and income became an asset of her estate and vested in her "heirs at law," subject to administration.
 Following a hearing the court made its findings that both Walter C. Miller, Jr. and Laura Miller Waldsmith, surviving issue of nephew Walter C. Miller, are now living and that both have children of their own; that Margaret Miller Dorstewitz died on July 4, 1942, leaving no issue of her body, but only her two adopted children and a husband, Robert J. Dorstewitz; that the gift of the income and principal of the trust to surviving lawful issue of Walter C. Miller was a class gift, "conditioned upon survivorship between the members of the class"; that the interest of each member of such class in the share of Walter C. Miller "was and is conditioned upon his or her survival until the time for payment of each future installment of income and of principal ..."; that the equitable estate of each child of Walter C. Miller is not an indefeasible fee; that the estate or interest of Margaret terminated at her death, whereupon Walter C. Jr. and Laura as the surviving lawful issue of their father became entitled to receive in equal shares the entirety of each installment of income and of principal of the trust so long as they live. The judgment ordered payment accordingly.
 On this appeal appellants make the same contentions as *641 in the court below. They insist that Margaret, on the death of her father, was vested with an equitable title to a share in the corpus of the trust estate to be inalienable by her and inheritable by her heirs, and that such equitable title was a fee estate because it had all the characteristics of an estate of inheritance. (Citing Title Insurance & Trust Co. v. Duffill, 191 Cal. 629 [218 P. 14], which is inapplicable.)
 The judgment is abundantly fortified. [1] It is a paramount rule of construction that if the intent of the testator can be ascertained its effect must be enforced. (Prob. Code, 101.) From the decree of distribution and the authorities it is clear that such intent was contrary to the contention of the appellant. [2] Another rule is that if a testamentary provision is capable of two interpretations, that is to be preferred which passes the inheritance to the legatees of the blood of the testator rather than to a stranger. (Estate of Hartson, 218 Cal. 536, 540 [24 P.2d 171].) [3] Moreover, each bequest to the collateral kin was a gift to a class. Section 1(c) of the decree of distribution awards one per cent of the trust estate to a class consisting of Walter C. Miller and his "surviving lawful issue." A gift to a class is a gift of an aggregate sum to a body of persons uncertain in number to be ascertained at a future time, all to take in some definite proportions, the amount of the share of each being dependent upon the ultimate number of the class. (6 Jarman on Wills, 232; Rest. Law of Property, p. 1451.) When members of a class pass on, the surviving members take to the exclusion of the devisees or heirs at law of such deceased member. (3 Page on Wills, Lifetime ed., 1058.) Thereby, the share of a deceased member increases the share of the survivors of the group. (In re Wood's Estate, 321 Pa. 497 [184 A. 13].) [4] The fact that there will probably be a fluctuation in the number of the beneficiaries differentiates the class gift from a bequest to individuals. (Rest., Law of Property, p. 1453.) In the case of a gift of income the recipients thereof must be determined at each periodic distribution by applying the formula prescribed by the testator. (Rowland Estate, 151 Pa. 25 [24 A. 1091].) [5] If he has required that deceased distributees be represented by their living issue, the interest of each member of the class is a life estate with remainder to go to his surviving lawful issue; if no issue *642 survive, then the share of such deceased goes to the surviving distributees, per stirpes. [6] The class is to be ascertained when the duty arises to convey and deliver, and survivorship at that time is one of the conditions of the gift. (Helvering v. Hallock, 309 U.S. 106, 117 [60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368].) [7] A gift to "surviving lawful issue" is not to individuals named but to a class of designated persons the members of which are to be ascertained either at the death of the specified beneficiary or at the time of distribution. (In re Leverich's Will, 125 Misc. 130 [210 N.Y.S. 605, 607].) [8] A bequest to "the legal heirs of a deceased child" is a bequest to a class. (Estate of Hartson, supra.) So, also, is a bequest to "the then survivors of the beneficiaries named."
 In order more securely to keep the legacy where it would serve only those of the class to which the gift was made, the Clark decree of distribution declares that if a nephew shall be deceased at the time such income shall be payable to him, then his share must be paid to his surviving lawful issue; but if he be deceased "at the time such income would have been payable to him, leaving no lawful issue," then the portion of income payable to him shall be held and paid by the trustees "to the then survivors of the beneficiaries named in this section ... in the proportions specified therein, calculated as between such survivors, and excluding from such calculation the beneficiary dying without lawful issue." The italicized language appears in two other sections of the decree, viz., 1 (d), in disposing of his widow's share should she die prior to a designated date during the continuance of the trust, and 1 (f) in disposing of the share of the grandson should the latter decease prior to the termination of the trust. The share of income or of the corpus set aside for Walter C. Miller could be vested in his "surviving lawful issue" only in the event such issue should be living at the date of payment of any installment of the income or at the date of the termination of the trust. The decree is equally emphatic that if any of the three children of Walter C. Miller should die leaving no issue, in that event those of his children then surviving should take his entire share to the exclusion of the lawful heirs of such deceased child.
 [9] When Margaret failed to survive to the time when payment of the next installment of income was due, and left no lawful issue surviving, her right to receive it perished *643 with her. The portion of the income she would have had received must be paid to the surviving members of the class, viz., "the surviving lawful issue" of Walter C. Miller. (Rest., Law of Property, p. 1607.) [10] When possession of a legacy is postponed to a future period it includes not only every person answering the description at the testator's death, but also all persons coming within the description before the time to which possession is postponed. (Prob. Code, 123.) In the Winter case (114 Cal. 186 [45 P. 1063]) the widow took only a life estate in the ranch which at her death was to be sold and the proceeds divided among her testator's brothers and sisters then surviving. It was held that survivorship referred to the "period of division," the date of the widow's death. In the Hartson estate payment of a share of the income from a trust estate was payable to a son, Ephriam, and his daughter, Ethel, during the lifetime of the children of testatrix, provided that on the death of the son his share be paid to his legal heirs, if any, and if not, then to be "divided between the remaining children." After the son's decease, his widow, Elizabeth, received the income from his share until her own death. It was held that Elizabeth's sisters were excluded from inheriting her share because (1) she was not of the blood of the testatrix and (2) the decree of distribution had ordered payment to the "legal heirs of her said deceased child," which could only mean Ethel. In the Estate of Easter, 24 Cal.2d 191 [148 P.2d 601], by decree of distribution, Catherine, the widow, received a monthly income from the trust estate, the balance to three daughters and a daughter-in-law, with a provision that upon the death of Catherine the trust terminate and the corpus "vest in the heirs at law" of the testator in accordance with a specified statute of succession. Upon the death of the widow, her administrator and that of the son who had died childless undertook to obtain a share. The claims of both were rejected. Only the two daughters surviving and the two grandchildren by a deceased daughter could inherit. Not more than a contingent interest had been distributed to the children, "the contingency being their survivorship of the testator's wife upon whose death the trust terminated."
 [11] Under these decisions, Mrs. Dorstewitz could not have been vested with an "indefeasible estate," for the reason that she had died before the termination of the trust. *644 Hence her estate could not pass to her adopted children. Under the rule of those cases the legatee class at Margaret's death included only the surviving, consanguineal posterity of Walter C. Miller. (33 C.J. p. 817; Bouvier.) Section 1 (c) makes survival of such issue to the date of payment of income or principal the guiding rule by which to determine the members of the legatee class.
 If possession of an inheritance is by the will postponed to a designated time, all reference to death or survivorship must be referred to the time of possession. (Prob. Code, 122.) Under any reasonable view the time for determining the rights of Walter's successors is the time at which the income becomes payable, and certainly no sooner than the death of Walter's daughter who left no lawful issue.
 Other sections of the decree justify the interpretation we have given. Any ambiguous or doubtful part of a will may be explained by reference to another portion of the same document. (Prob. Code, 103.) Not only is the language of section 1(c) used in 1(d) and 1(f), but section 1(g) prescribes the formula for disposing of the grandson's share of the income should he die before attaining his majority and during the continuance of the trust. It is there provided that if J. Ross Clark, II leave no widow or child, then such income shall go to the same collateral kin before named and in the same manner and order as prescribed in section 1(c). When Margaret passed on leaving no issue such event thrust the entire share of the trust estate enjoyed by Walter C. Miller upon his then two surviving children: Walter C. Jr. and Laura. This conclusion is further borne out by section 2(b) which provides for distribution of a share of the corpus upon the grandson's attaining the age of thirty-five years, and 3(b) which makes provision for the distribution of the entire estate upon the termination of the trust. Both contain the same contingent bequest to Walter C. Miller, and the restrictions against the gifts' passing to strangers to the blood are identical with those in sections 1(c) and 1(g).
 It follows that the court below has correctly interpreted the decree of final distribution in ordering the distribution of all income and principal of the Walter C. Miller share to Walter C. Miller, Jr., and Laura or to the lawful issue of them surviving on the dates of distribution.
 Having assumed that at her father's death Margaret was *645 vested with an equitable title to one-third of his share, appellants present an elaborate argument and cite innumerable authorities to support the propositions (1) that the decree of distribution makes no provision for a forfeiture by Margaret of her portion; (2) that it contains no provision for divesting an interest once acquired. Margaret having deceased without lawful issue, the right to the income from her father's share was vested in her brother and sister. She was not deprived of it by "forfeiture." Her estate merely terminated at her death.
 In support of the contention that Margaret owned an indefeasible right upon the death of her father and was entitled promptly to be vested therewith, appellants cite numerous authorities. (Miller v. Oliver, 54 Cal.App. 495 [202 P. 168]; In re De Vries, 17 Cal.App. 184 [119 P. 109]; Estate of Washburn, 11 Cal.App. 735 [106 P. 415]; Estate of Lawrence, 17 Cal.2d 1 [108 P.2d 893]; Williams v. Williams, 73 Cal. 99 [14 P. 394]; Estate of Rider, 199 Cal. 724, 738 [251 P. 799]; Litten v. Warren, 11 Cal.App.2d 635, 637 [54 P.2d 39]; In re Shoemake, 211 Cal. 457 [295 P. 830]; Estate of Newman, 68 Cal.App. 420, 424 [229 P. 898]; Estate of Whitney, 176 Cal. 12 [167 P. 399]; Rest., Law of Property, pp. 1217, 1218, 1219.) Except for the fact that they contain statements of general principles, "very little aid can be procured from adjudged cases in the construction of wills." (Estate of Wilson, 184 Cal. 63, 68 [193 P. 581].) The cited cases are merely illustrative of the rule (Prob. Code, 140) that where it is the clear intention of the testator that property should pass to legatees or devisees named upon the happening of a specified occurrence, intervening events do not defeat such intention of the testator. Neither "indefeasible vesting" nor "early vesting" can be involved unless it be first determined that the testator intended some sort of vesting. We have shown by the decree of distribution that his clear intent was that Margaret should hold a life estate only, with a perpetual ownership in her surviving lawful issue, and if none, her share to go to her brother and sister subject to the same limitation with respect to their surviving lawful issue.
 Had all three of the Miller children survived until the termination of the trust, each would have been vested with a fee in one-third of the corpus of the trust. But when Margaret *646 died pending the trust without surviving lawful issue, all payments of income thereafter must go to the "surviving lawful issue" of Walter C. Miller. When the testator, in order to prevent strangers to his blood from enjoying his estate, provided that if any of Mr. Miller's children should die without lawful issue surviving the share that might have gone to such issue must "be held and paid to the then surviving issue of Walter C. Miller," he exercised a prerogative of ownership which cannot under law be denied him.
 It follows that since Mrs. Dorstewitz never had more than a life estate in the portion she enjoyed, nothing passed to her husband and adopted children. Her "lawful heirs" cannot be substituted for "surviving lawful issue" as a device for perpetuating in her heirs the enjoyment of the estate which had been restricted by the hand of the benefactor to those of his own blood.
 Orders affirmed.
 Wood (W. J.), J., and McComb, J., concurred.