344 P.2d 16]

[Civ. No. 18319.   First Dist., Div. One.   Sept. 24, 1959.]

Estate of ELEANOR J. HANEY, Deceased.   HENRY S. KINSELL et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Testamentary Trustee, etc., et al., Respondents.

2

Gilbert D. Calden and A. Brooks Berlin for Appellants.

Stanley Mosk, Attorney General, B. Abbott Goldberg, Assistant Attorney General, Elizabeth Palmer, Albert W. Harris, Jr., Deputy Attorneys General, Beard & Wien, Henry Wien and Albert T. Shine, Jr., for Respondents.

TOBRINER, J.—The basic problem for decision is whether certain assignments of interests in a testamentary trust were effective, thus decreasing or defeating the interests of the appellants. The trial court held such assignments effective. We disagree; the assignors merely possessed contingent remainders; on the nonoccurrence of the condition the assignee possessed nothing.

The following genealogical chart* will be helpful in understanding the problem involved.

Eleanor Haney died January 19, 1913. Her will was admitted to probate February 11, 1913. Paragraph 10 provided:

"All the rest, residue and remainder of my property . . .

---

*See following page.

I give . . . to Dudley Kinsell and J. B. Richardson . . . in trust . . . and they shall pay and apply the rents, issues and profits thereof . . . for the use and benefit of my . . . granddaughter, Eleanor L. Hickman . . . for the natural life of my said granddaughter. But upon the death of my said granddaughter said property . . . so given . . . in trust shall immediately vest in and become the property of my sister, Mary A. Kinsell, but if she shall have died prior thereto said property shall vest in and become the property of her children and in the children of her deceased children by right of representation.''

The testatrix was survived by Eleanor Hickman, Mary Kinsell and four of her children, Benjamin, Helen, Dudley and Omega; a fifth child, Henry Searing Kinsell, had predeceased the testatrix, but left as his survivor Henry Smyth Kinsell.

Prior to the probate of the testatrix's will Mary Kinsell and three of her children, Benjamin, Dudley and Helen, assigned any interests they might have by virtue of paragraph 10 to Eleanor Hickman. The four decrees of distribution, which together established the corpus of the testamentary trust, transferred to the trustees property from which the rents, issues and profits were to be utilized for the benefit of the life tenant, Eleanor Hickman. All these decrees then continued with the following provision, into which we have inserted numerals for reference: ''provided, however, that *upon the death of said Eleanor L. Hickman said sum and the accumulations* thereof *shall vest in* and become the property of *the following persons, to wit:*

''If . . . Mary A. Kinsell shall have died prior to the death

of . . . Eleanor L. Hickman, and . . . Benjamin Kinsell, Helen R. Kinsell and Dudley Kinsell [1] be then living, then so much of said trust fund . . . as would otherwise have vested in them had such assignments not been executed, shall vest in, become, and be deemed the property of the estate of . . . Eleanor L. Hickman, and if the said Omega K. Swartz and Henry S. Kinsell [2] likewise be then living, then so much of such trust . . . shall vest in, become and be deemed their property respectively; but if any of [3] said descendants of . . . Mary A. Kinsell shall have [4] theretofore died, then that one's share or proportion of such trust fund and the accumulations thereof shall vest in and become the property of those respectively entitled thereto according to . . . the will of said decedent Eleanor J. Haney.'' (Emphasis added.)

Mary Kinsell and her daughter, Omega, predeceased the life tenant. Mary Kinsell was survived by her three children who had assigned their interests to the life tenant. Omega was survived by her four children, the Swartz appellants. Eleanor Hickman, the life tenant, died in September, 1957. None of Mary Kinsell's children survived the life tenant, but six of Mary's grandchildren did: Henry Smyth Kinsell, son of Henry Searing Kinsell; Mary Bredow, daughter of Benjamin Kinsell; and Benjamin, Philip, Herman and Elizabeth Swartz, the children of Omega Kinsell Swartz. Two children of the life tenant, John and Dudley Hickman, also survived their mother.

Upon the life tenant's death the successor trustee, the Bank of America, petitioned for termination of the trust. The court distributed the trust property in the following manner:

(1) Three-fifths (representing the assignments of Benjamin, Helen and Dudley Kinsell) to the estate of Eleanor Hickman;

(2) One-fifth to Philip, Benjamin, Herman and Elizabeth Swartz, in equal shares; and

(3) One-fifth to Henry Smyth Kinsell.

In determining the effectiveness of the assignments, the provision in the decrees of distribution must be construed first since to the extent of any inconsistency between such provision and the will it is settled that the former controls. (*Estate of Easter* (1944), 24 Cal.2d 191, 194 [148 P.2d 601]; *Estate of Loring* (1946), 29 Cal.2d 423, 427 [175 P.2d 524].)

The provision in these decrees distinctly indicates that the interests in this trust of Benjamin, Helen, and Dudley

Kinsell (and hence the estate of Eleanor Hickman), Omega and Henry Smyth Kinsell were to vest in interest only upon the death of the life tenant.

The clause "If . . . Benjamin Kinsell, Helen R. Kinsell and Dudley Kinsell [1] be then living" obviously refers to the time of the death of Eleanor Hickman. The contingency of the respondent-assignees' interest upon Benjamin, Helen and Dudley Kinsell surviving the life tenant is evident from the decrees, which provide that if these three assignors were [1] "then living, then," pursuant to the assignments the property which would "otherwise have vested in them . . . shall vest in . . . the estate of . . . Eleanor L. Hickman."

The condition precedent of survivorship attached to the interests of the three assignors above was equally pinioned to the interests of Omega Kinsell Swartz and Henry Smyth Kinsell. The decrees provide that if "Omega K. Swartz and Henry S. Kinsell likewise be then living, then so much of such trust . . . shall vest" in them. The phrase [2] "likewise be then living" refers to [1] "then living" in the last paragraph, which in turn refers to the death of the life tenant.

The postponement of vesting is further supported by the first few lines in the decrees when considered with the last several lines, which read: "provided, however, that upon the death of said Eleanor L. Hickman said sum and the accumulations thereof shall vest in and become the property of the following persons, to wit:

". . . but if any of [3] said descendents of . . . Mary A. Kinsell shall have [4] theretofore died, then that one's share or proportion of such trust fund . . . shall vest in and become the property of those respectively entitled thereto according to . . . the will of said decedent Eleanor J. Haney." The language obviously embodies the requirement that all the descendants of Mary Kinsell previously mentioned must survive the life tenant in order to be vested with any interest in the trust fund. Finally, since Benjamin, Helen and Dudley Kinsell were children of Mary Kinsell, they were [3] "said descendents" of Mary. Furthermore, the word [4] "theretofore" refers to the phrases [2] "likewise be then living" and [1] "be then living" which refer to the time of death of Eleanor Hickman.

The conclusion which necessarily follows from the decrees is that upon the death of the three assignors prior to the life tenant the interests which might have vested in them passed

pursuant to the will of Eleanor Haney. ■ The interest of the estate of Eleanor Hickman, and hence the estate of John Peralta Hickman, vanished into thin air since the assignee of an interest subject to a condition of survivorship can receive no more than his assignor had to assign. (2 Powell, The Law of Real Property [1950], § 326, p. 716.) The assignment cannot work an engrossment of its own subject matter.

■ We therefore believe the language literally provides that the interests of those entitled to the trust fund under Eleanor Haney's will were to vest only upon the life tenant's death, and, as we shall point out, this interpretation accords with the pertinent decisions.

*Estate of Easter, supra* (1944), 24 Cal.2d 191, construes a provision similar to the instant one as literally implying a condition precedent of survival from the use of the term "vest." In that case the testator in his will of March 30, 1920, provided for a testamentary trust for the life of his widow Catherine Easter and four children, the trust to terminate upon the death of the survivor of these five beneficiaries. The will also provided that " '[u]pon the termination of this trust my said Trustee shall convey, deliver and pay over all the corpus . . . unto my heirs at law in accordance with the present statute of succession of the State of California.' " (P. 192.) A subsequent codicil, besides rearranging the interests of the beneficiaries, made the wife's death the termination date of the trust.

The testator died February 2, 1923, and pursuant to the will the court provided in the decree of distribution that " '[u]*pon the death of the said Catherine Easter* the trust . . . shall terminate and *all of the property* then in the hands of the trustee . . . *shall go to and vest in* the heirs at law of the . . . [testator] in accordance with the statute of succession of the State of California in force in the month of March, 1920 . . .' . . .' ". (P. 193.) Among others a son survived the testator, but the son predeceased the testator's widow, Catherine Easter. Upon Catherine Easter's death in 1942 the portion of the trust which the son would have taken if living was claimed by his wife.

The Supreme Court rejected the wife's claim, and, referring to the quoted decree, stated: "This portion of the decree was properly construed by the trial court herein to distribute a contingent interest only to the heirs, the contingency being their survivorship of the testator's wife upon whose death

the trust terminated. In other words, the interest of the heirs was to vest only upon their surviving such termination of the trust. The decree of distribution, by providing that two things should occur '[u]pon the death of the said Catherine Easter,' namely, 1. 'the trust . . . shall terminate,' and 2. 'all the property then in the hands of the trustee . . . shall go to and vest in the heirs at law of said Alfred Easter, deceased,' clearly indicates an intention 'that the interests of the heirs should vest at the time of the termination of the trust. Any other construction would ignore the normal and usual meaning of the words 'shall go to and vest in the heirs at law.' '' (P. 195.)

▆ Although we have concluded that the interests involved in 'this case are subject to a condition precedent of survivorship, imposed by the use of the technical word "vest," we recognize that "vest" may be construed as "vest in possession." (See dissent in *Estate of Easter, supra* (1944), 24 Cal.2d 191, 196, and *Randall* v. *Bank of America* (1941), 48 Cal.App.2d 249 [119 P.2d 754].) However, "the ordinary meaning of the word 'vested' is 'vested in interest' and not 'vested in possession' '' and courts are "reluctant to construe the word as meaning vested in possession unless the context fixes this meaning on the word." (3 Jarman on Wills [8th ed., 1951], p. 2042.) The context in the instant case does not fix this meaning on the word.

▆ The court's reluctance to impose the secondary meaning upon the word "vest" undoubtedly, and properly, stems from another well established rule of construction, that is, the testator's intent is to be given effect "as far as possible." (Prob. Code, § 101.) This rule of construction has been held to be a "paramount canon in the construction of wills" to which "[a]ll other rules must bend." (*Estate of Smith* (1943), 58 Cal.App.2d 352, 354 [136 P.2d 366]; see also *Estate of Akeley* (1950), 35 Cal.2d 26, 28-29 [215 P.2d 921, 17 A.L.R.2d 647].) ▆ A decree of distribution is a judicial interpretation of such intent; the canon applies to it with the same force that it pertains to the will. ▆ And while a decedent's freedom of testation is subject to many restrictions, it has long been settled that contingent remainders are not illegal; to construe the word "vest" as implying its secondary meaning when the context does not so require would be a clear violation of the legislative mandate that the testator's intent must be given effect whenever possible.

▆ We recognize that in California the presumption in

favor of a vested interest is a strong presumption and words which might seem to suggest a condition precedent of survivorship must be construed so as not to reach such a result if at all possible, *Estate of Stanford* (1957), 49 Cal.2d 120 [315 P.2d 681]. That case also involved the disposition of a testamentary trust following the death of the life tenant. The decree of distribution to the trust had provided, in the identical language of the will, that Amy Hansen was to receive the net income from one-sixth of the trust fund for her life and " 'upon her death [the] trust shall cease' " and one-sixth of the corpus " 'shall belong and be delivered to the child or children of' " Amy Hansen. (P. 123.) Amy Hansen had one natural child, Walter, who predeceased her, bequeathing his estate to Ruth Barton. Amy Hansen had adopted three children. She died in 1954 and was survived by her adopted children. The trial court distributed the trust corpus to these three children, and held that Ruth Barton's interest had failed, seemingly, on the theory that Walter's interest had been subject to a condition precedent of surviving his mother.

The Supreme Court, applying the presumption in favor of vested interests, reversed, and stated: "The words of the will her life. While the words thereafter directing that the corpus is nothing more than a way of saying that the trust is for her life. While the words thereafter directing that the corpus shall 'belong' to and 'be delivered' to the life tenant's children, the remaindermen, may encompass ownership in other situations . . . , they are not technical terms but are ones which are common in everyday usage and may refer to possession only. . . . This serves to distinguish *Estate of Easter*, 24 Cal.2d 191 [148 P.2d 601]. . . . Nor do we attach any persuasive significance to the remaindermen being referred to as child or children. It merely indicates that the testator wished to keep the class open to any additional children of Amy Hansen inasmuch as she had only one child when the will was made and when the testatrix died." (Pp. 129-130.)

The Supreme Court in this case disapproved "insofar as the question herein decided is concerned" (p. 129), *Estate of Cavarly* (1897), 119 Cal. 406 [51 P. 629]; *Estate of Blake* (1910), 157 Cal. 448 [108 P. 287]; *Estate of Hamon* (1934), 136 Cal.App. 517 [29 P.2d 326]; and *Estate of Clark* (1944), 64 Cal.App.2d 636 [149 P.2d 465]. The net result of the Stanford case is that a condition precedent of survivorship will not be implied, in a will which omits the technical term "vest," to defeat the presumption in favor of vested interests

merely because (1) words of a present gift are absent, or (2) a trustee is to deliver the property at a later date, or (3) the gift of a future interest is to a class, or (4) any combination of these three factors.

Pursuant to this presumption in favor of vested interests, no condition precedent of survival will be found unless "there is a literal basis for such implication because the direction in the will cannot be effectively carried out unless the devisee or legatee survives." (Simes and Smith, The Law of Future Interests [2d ed., 1956], § 576, p. 12.) As we have demonstrated *supra,* there is in the present case a literal basis for such a condition precedent of survival.

■ This asserted preference for a vested remainder is in part at least the vestigial remains of the rules of a past era of the law. It arose "at an early period in English law" when contingent remainders were destructible and inalienable; while "the law as to these matters has changed, the preference for the vested construction still continues." (Simes on Future Interests [1951], § 10, p. 32.) We need not be influenced today by the uneasiness of feudal law in the face of a title not vested. The testatrix's intent should not be subordinate to a legalistic preference for vested interests. Here, the will and the decrees indicate that they were prepared by attorneys; most of those in the legal profession probably regard "vest" as meaning "vest in interest." While it is true that if we were to accept respondents' theory of early vesting, future interests which otherwise would violate the rule against perpetuities could be saved, we question whether attorneys, and consequently their clients, who have not attempted to postpone vesting for longer than lives in being, plus 21 years, should be penalized in order to protect those who violate this rule. Since respondents' arguments are premised on the theory that the constructural preference for vested interests requires that "vest" be construed as "vest in possession" our reasoning conflicts with their conclusion.

We now turn to the determination of the individual descendants of Mary Kinsell who should take the property involved.

■ While the decrees of distribution delineate the interests of Mary Kinsell's children and the tenuous nature of the assignments, the decrees do not specifically provide who is entitled to the trust funds under the circumstances here, that is, where Mary and all her children have predeceased the

life tenant. The decrees only provide that in the event those specifically mentioned in the decrees fail to survive the life tenant then ''that one's share . . . of such trust fund . . . shall vest in . . . those . . . entitled thereto according to . . . the will of . . . Eleanor J. Haney.'' Therefore, in order to decide who is now entitled to the trust fund the will itself must be construed. (*Estate of Goldberg* (1938), 10 Cal.2d 709 [76 P.2d 508]; *Estate of Norris* (1947), 78 Cal.App.2d 152 [177 P.2d 299]; *Estate of Lockhart* (1937), 21 Cal.App. 2d 574 [69 P.2d 1001].)

The pertinent portion of the will provides that ''upon the death of . . . [the life tenant] said property . . . so given . . . in trust shall immediately vest in and become the property of my said sister, Mary A. Kinsell, but if she shall have died prior thereto said property shall vest in and become the property *of her children* and *in the children of any of her deceased children* by right of representation.'' (Emphasis added.)

While the time of the vesting in Mary's children and children of deceased children is not as perspicuously expressed here as in the decrees, any argument that the gift to this group vested prior to the life tenant's death is foreclosed.

The gift over to Mary's children and children of deceased children is prima facie a class gift. (3 Page on Wills [1941], § 1047, pp. 200-211.) The abstention of the testatrix from individually naming those who were to take, and her designation of the class, instead, demonstrates her group mindedness. The members of this group all have the common characteristic of descent from Mary Kinsell. An aggregate sum was bequeathed to the group, and not to the members individually. Furthermore, the group possessed the capacity to fluctuate; it could increase because Mary Kinsell was still alive from the time of the writing of the will until sometime subsequent to the death of the testatrix; and it could decrease, since members of this group were not to possess vested interests until the death of the life tenant. (3 Page on Wills [1941], §.1052, p. 216.) Thus, Jarman's definition of a class gift is more than satisfied: ''an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in. some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.'' (1 Jarman on Wills [7th ed., 1930], p. 310.)

This definition of a class gift is ''widely quoted in

American cases,'' (2 Simes & Smith, The Law of Future Interests [2d ed., 1956], § 615, p. 54) as well as in California decisions (*Estate of Murphy* (1909), 157 Cal. 63, 67 [106 P. 230, 137 Am.St.Rep. 110] ; *Estate of Henderson* (1911), 161 Cal. 353, 360 [119 P. 496] ; *Estate of Kelleher* (1928), 205 Cal. 757, 760 [272 P. 1060] ; *Estate of Clark* (1944), 64 Cal. App.2d 636, 641 [149 P.2d 465].)

Nor does the fact that the decrees specifically named Mary Kinsell's children and Henry Smyth Kinsell destroy the class gift nature of the bequest. We shall point out why we do not consider the decrees controlling on this point.

Three of the decrees of distribution, November 20, 1916, February 28, 1917, and October 7, 1919, set forth paragraph 10 of the will verbatim as the authority for a distribution to those persons specifically named, should they survive Eleanor Hickman. The decree of July 19, 1915, while not setting forth paragraph 10 in full, referred to this paragraph and provided ''that should the said Mary A. Kinsell die prior to the death of said Eleanor L. Hickman mentioned in the will, then such property should vest in and become the property of said Mary A. Kinsell's children and the children of any of her deceased children by right of representation . . . .'' The decrees did not specify what proportion of the trust fund each remainderman would acquire. The decrees also failed to designate what portion and in whom the property should vest if any of the specified parties should predecease the life tenant. It is this ambiguity and the quotation from the will which induce us to construe the will to provide for a class gift. (*Estate of Goldberg, supra* [1938], 10 Cal. 2d 709 ; *Estate of Norris, supra* (1947), 78 Cal.App.2d 152, and *Estate of Lockhart, supra* (1937), 21 Cal.App.2d 574.)

We turn to the problem of who is included in the class. When a gift to a class is to vest in the members of such class at some future time, during the period of postponement the class possesses the ability to increase and decrease. (2 Powell, The Law of Real Property [1952], §§ 364, 365, pp. 147, 164.) At the time of vesting only those persons alive are regarded as members of the class; those persons who would have been included if living were technically never members of the class, but only potential members. The gift to the class must therefore be distributed among those who qualify at the time specified. (3 Powell, The Law of Real Property, § 365, especially p. 165.) Justice Cardozo in *In re Buechner* (1919), 226 N.Y. 440 [123 N.E. 741], recognized and applied this rule.

In that case the testator created a testamentary trust one-half of which was for the use of a brother, William, during his life, with remainders to William's children living at his death. William had three children, one of whom predeceased him. Upon William's death both the surrogate court and the appellate division held that the trust was to be split three ways, the administratrix of the deceased child being entitled to one-third. The Court of Appeal reversed and held that the trust was to be shared equally by the two surviving children.

In the instant case only the children of the deceased children of Mary Kinsell qualified as members of the class; the trust fund must then be distributed to them by right of representation, in accordance with *Van Tiger* v. *Superior Court* (1936), 7 Cal.2d 377 [60 P.2d 851]. In that case, Brickman, the testator, left the estate to his lawful heirs. He was survived by nine children of three deceased brothers and sisters. Pursuant to Probate Code, section 225, the trial court decreed the distribution of the property by right of representation one-third to petitioner, the only child of one of the testator's deceased brothers, one-third to the three children of another deceased brother, and one-third to the five children of a deceased sister. In granting the writ of prohibition to restrain any "correction" of this decree by the trial court, the Supreme Court stated " 'no other distribution would have been proper under the facts of the case and the law applicable thereto.' " (P. 382.) In the instant case, the interest of the appellants being limited by right of representation, the trust fund must be distributed one-third to Mary Bredow, one-third to Henry Smyth Kinsell, and one-third to the four Swartzes, to be shared equally.

Instead of the above distribution, however, all of the appellants request that the trust be distributed one-fifth to Mary Bredow, one-fifth to Henry Smyth Kinsell, and one-fifth to the Swartzes equally; and that the other two-fifths, representing the interests which Helen and Dudley Kinsell would have taken had they survived, be distributed as follows: one-third to Mary Bredow, one-third to Henry Smyth Kinsell, and one-third to the four Swartzes. This distribution mathematically equals our division but it raises certain theoretical difficulties.

Where a bequest to a class is to vest at some future time, the death of a potential member prior to such time causes the gift to be shared only by those who qualify as members at the time set for the determination of the class. (*In re Winter* [1896], 114 Cal. 186, 190-191 [45 P. 1063] ; Thomp-

son, The Law of Wills [3d ed., 1947], §§ 307, 310, pp. 467, 470.) A potential member who failed to qualify as an actual member is to be disregarded; the interest he would have taken is not to be segregated and treated as a second gift to the class. Appellants' theory of distribution conflicts with this rule.

Appellants' theory of distribution may also be based on a misconception of the right of representation. Probate Code, section 250, provides that "[i]nheritance or succession 'by right of representation' takes place when the descendants of a deceased person take the same share or right in the estate of another that such deceased person would have taken as an heir if living." None of the appellants are descendants of their uncle and aunt, Helen and Dudley; since both of these persons predeceased the life tenant and never acquired a vested interest in the trust there is no need to resurrect them to determine the interest of their nephews and nieces; section 250 does not require such artificiality. Rather, only the parents of these appellants should be regarded as living for the purpose of representation. Under this construction, had Henry Kinsell, Benjamin Kinsell and Omega Kinsell Swartz been living at the death of the life tenant a tripartite split would have resulted; this is the situation to which the appellants succeed.

The trust fund should be distributed one-third to Mary Bredow, one-third to Henry Kinsell and one-third to the Swartzes, to be shared equally. The judgment appealed from is reversed with direction to enter a new judgment in accordance with the views hereinabove expressed.

Bray, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 22, 1959, and the petitions of respondents Department of Mental Hygiene and of Dudley S. Hickman for a hearing by the Supreme Court were denied November 18, 1959.