[Civ. No. 20173.   First Dist., Div. One.   Apr. 17, 1962.]

Estate of MARY E. DOYLE, Deceased. SALLY LOU DOYLE WOODRING, Objector and Appellant, v. MELDRUM DOYLE et al., Claimants and Respondents.

Spridgen, Moskowitz, Barrett & Anchor, John H. Moskowitz and Edwin C. Anderson, Jr., for Objector and Appellant.

De Meo & De Meo, John F. De Meo, Foster & Waner, Murphy, Brownscombe & Gleason and Thomas M. Brownscombe for Claimants and Respondents.

TOBRINER, J.—Appellant here challenges the probate court's determination that she is not entitled to share in the distribution of the corpus of a trust established by her grandmother's will. We do not believe that appellant's previous appeal in another case has foreclosed our consideration of the merits of her claim. Reaching the substantive issues, we conclude that appellant is entitled to share equally with her brothers and sisters, respondents in this case, in the distribution of the corpus of the trust.

We describe the factual background which led to the present appeal. The testatrix, Mary E. Doyle, died on March 3, 1926, leaving a will dated February 1, 1924. Article VII of her

will, establishing a trust composed of one-third of the residue of her estate, provided as follows: "I give, devise and bequeath an undivided one-third of all the rest, residue and remainder of my property and estate of whatever kind and wheresoever situated (hereinafter called the 'trust estate') to my son Frank P. Doyle, as trustee upon the following trusts, and for the following uses and purposes, namely:

"(a) To pay monthly an undivided one-half of such net rents, issues, profits and income to my son Fred R. Doyle, during his lifetime;

"(b) The other undivided one-half of the net rents, issues, profits and income of said trust estate as and when received shall be deemed and treated as divided into as many shares as there are issue of my son Fred R. Doyle, and one of such shares shall be deemed to have been received for the benefit of each of such issue, of my said son. One of such shares shall be paid to each of such of the issue of my said son as have attained majority, but the trustee shall during the minority of any one of such issue apply to the use of such one so much of such share as shall be necessary, in the discretion of the trustee, to provide for his or her support, education and maintenance, and shall accumulate the remainder of such share for his or her benefit, until he or she shall attain majority. From and after the time when each one of the issue of my son Fred shall attain majority, the share of such net rents, issues, profits and income of the trust estate received for his or her benefit shall be paid to him or her during the continuance of the trusts created by this Article. If any of such persons for whom any share of said net rents, issues, profits and income of the trust estate has been received shall die before attaining his or her majority, all rents, issues, profits and income theretofore accumulated or then held for his or her benefit shall be deemed and treated as divided into as many shares as there are then surviving issue of my said son, and one of such shares shall go to and vest in and be paid to each of the then living issue of my said son who shall then have attained majority, and one of said shares shall be added to and become a part of each of the several accumulations theretofore made for the benefit respectively of the then living issue of my said son who shall not then have attained majority.

"(c) Upon the death of my son Fred R. Doyle, then all the net rents, issues, profits and income of said trust estate shall go and be paid to the issue of my son Fred R. Doyle, subject

to the same trusts and conditions as are set forth in the preceding subdivision (b) of this Article VII.

"(d) When each one of the issue of my son Fred R. Doyle shall respectively attain the age of thirty years, there shall vest in and be paid to such one, his or her equal share of the trust estate; but if any of the issue of Fred R. Doyle shall die before attaining the age of thirty years, then the share of the trust estate which the one so deceased would have taken, shall vest in and be paid to the issue of such deceased, if any; but if such deceased should die leaving no issue surviving, then it shall vest in and be paid to the survivors of the issue of my said son Fred R. Doyle;

"(e) The trusts created by this Article VII shall in no event continue after the death of the last survivor of the following named persons: My son Fred R. Doyle, and his issue living at the time of my death."

Deceased left surviving her, her son, Fred R. Doyle, and his six children: Lucy Doyle Hadaway, Evelyn Doyle Hiatt (now Evelyn Doyle Basso), Tessie Doyle (also known as Zelma Doyle), Meldrum Doyle, Edward R. Doyle and Walter Doyle. Appellant, Sally Lou Doyle Woodring, also a child of Fred R. Doyle, was born on August 12, 1927, subsequent to Mary Doyle's death.

In its decree of final distribution, dated February 25, 1927, the probate court construed subdivision (b) of article VII as applying only to the six children alive at the death of the testatrix and at the date of the decree, saying: "(b) The other undivided one-half (½) of the net rents, issues, profits and income of said trust estate as and when received shall be deemed and treated as divided into six (6) shares, and one of such shares shall be deemed to have been received for the benefit of each of the following named children of said FRED R. DOYLE, to-wit: LUCY DOYLE HADAWAY, EVELYN DOYLE HIATT, TESSIE DOYLE, MELDRUM DOYLE, EDWARD R. DOYLE and WALTER DOYLE." The court further stated in subdivision (c) of its paragraph (7), in reference to subdivision (c) of the will, that "Upon the death of said Fred R. Doyle, then all the net rents, issues, profits and income of said trust estate shall go and be paid to the issue of said Fred R. Doyle, subject to the same trusts and conditions as are set forth in the preceding subdivision (b) of this paragraph 7; . . ." The court did not designate by name the issue entitled to take under subdivision (c).

Fred R. Doyle, the life beneficiary, died on June 21, 1959, survived by his seven children, all of whom were over 30 years of age.

On October 9, 1959, appellant filed an action in the Superior Court, County of Sonoma, naming as defendants the other six children of Fred R. Doyle and the trustees of the trust, wherein she sought to set aside the 1927 decree of distribution and to impose a constructive trust on the grounds of mistake and fraud. (*Woodring* v. *Basso,* 3 Civ. 10147.) In her complaint appellant challenged both the past distributions of trust property in accordance with subdivision (b) of the decree and the proposed distribution of the trust corpus under subdivision (c) to only the six children named in subdivision (b). The trial court sustained without leave to amend the defendants' demurrers upon the grounds that the complaint failed to state facts sufficient to constitute a cause of action for extrinsic fraud or mistake and that the causes of action were barred by the statute of limitations. The court specifically refrained from determining the fate of the undistributed corpus and income of the trust, stating that the probate court retained exclusive jurisdiction over the trust. On appeal the Third District Court of Appeal affirmed the trial court's decision sustaining the demurrers. (*Woodring* v. *Basso* (1961) 195 Cal.App.2d 459 [15 Cal.Rptr. 805].)

On February 9, 1961, the probate court, in the proceeding which is the subject of this present appeal, entered its order determining that the corpus of the trust passed upon its termination in equal shares to the six children named in subdivision (b) of the decree of distribution. Appellant, the seventh child, has brought this appeal from that order claiming her right to share in the distribution of the remaining trust property.

We shall first dispose of respondents' contention that the decision in *Woodring* v. *Basso, supra,* 195 Cal.App.2d 459 precludes our consideration of the substantive merits of appellant's claim. We shall then consider the arguments of the parties regarding appellant's position in relation to the 1927 decree of distribution and her grandmother's will.

The trial court in the *Woodring* case, when confronted with appellant's complaint charging mistake and fraud involving the decree of distribution and requesting distribution to her of a portion of the corpus of the trust upon its termination, as well as income already distributed to her brothers and sisters under subdivision (b), specifically refrained from

deciding the fate of the undistributed income and the corpus, saying: "With respect to the undistributed income, accumulations and assets of the trusts being administered in the matter of the estate of Mary E. Doyle, Deceased, it appears that the superior court does not have jurisdiction and that exclusive jurisdiction over those matters is in the probate court." (*Woodring* v. *Basso,* Order in re Demurrers and Motion to Strike.) The trial court refused to determine appellant's rights upon the trust's termination, the exact issue before this court. Likewise, the appellate court in that case did not reach the issue. Consequently, the respondents cannot successfully urge the defense of res judicata on this appeal to foreclose this court from deciding the substantive issues. On the contrary, the trial court's decision in the former action is, itself, an adjudication that appellant is entitled to litigate her right to a share in the corpus of the trust in this action.

The principle of res judicata, therefore, serves to require that we determine upon this appeal the merits of appellant's contentions. As the Restatement of the Law of Judgments declares, "Where a party was precluded by the court from litigating a claim in the first action on the ground that it should be litigated in a separate action, the rules of res judicata do not preclude him from litigating it in a separate action; on the contrary his right to litigate it in a separate action is res judicata." (§ 67, comment a, pp. 286, 287.) ▮▮▮ The Supreme Court recognizes the principle in *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 141 [231 P.2d 6, 21 A.L.R.2d 1387], stating a judgment "is not res judicata . . . as to any matters which the court expressly refused to determine and which it directed should be litigated in another forum or in another action." (*Stark* v. *Coker* (1942) 20 Cal. 2d 839, 843 [129 P.2d 390] ; *Estate of Liddle* (1958) 162 Cal. App.2d 7, 13 [328 P.2d 35] ; *Estate of Hill* (1957) 149 Cal.App.2d 779, 787 [309 P.2d 39] ; 3 Witkin, Cal. Procedure, § 65, p. 1952; Restatement, Judgments, § 67.)

We proceed to a consideration of the merits of appellant's contention that she is entitled to share in the distribution of the corpus of the trust upon its termination. Appellant rests her claim on three bases: first, that the use of the term "issue" in the decree described a class which included all persons coming within the description before the time of possession of the gift; second, that the naming of the six children in subdivision (b) of the decree does not preclude

her from taking under subdivision (c) of the decree which uses only the general term ''issue''; third, that at best the decree is confusing and ambiguous, thus entitling this court to review the language of the will to ascertain the intent of the testatrix, and that the intent of the testatrix was that all of the children of Fred R. Doyle share, as his ''issue,'' in the distribution of the corpus of the trust.

As we shall point out in more detail, we believe that appellant's contentions are well founded. A logical and reasonable construction of subdivision (c) of the decree would permit appellant to share in the distribution as a member of the class described as ''issue.'' Even assuming, however, the decree could be interpreted to disallow appellant's claim, the decree is at least ambiguous concerning the distribution of the trust corpus after the death of the life beneficiary, and thus necessitates an examination of the will itself. Finally, our reading of the will, upon which the decree necessarily rests, convinces us that the testatrix intended to include as beneficiaries all the issue of her son whether born before or after her own death. Appellant, therefore, is entitled to share equally with her brothers and sisters in the distribution of the corpus of the trust.

The portion of paragraph (7) of the 1927 decree and its counterpart in article VII of Mary Doyle's will providing for a gift over of trust assets after Fred Doyle's death to his ''issue'' constitutes a class gift. This court analyzed and discussed a similar problem in *Estate of Haney* (1959) 174 Cal.App.2d 1 [344 P.2d 16], wherein we made the following observations regarding the characteristics of a class gift: ''The gift over to Mary's children and children of deceased children is prima facie a class gift. (3 Page on Wills [1941], § 1047, pp. 200-211.) The abstention of the testatrix from individually naming those who were to take, and her designation of the class, instead, demonstrates her group mindedness. The members of this group all have the common characteristic of descent from Mary Kinsell. An aggregate sum was bequeathed to the group, and not to the members individually. Furthermore, the group possessed the capacity to fluctuate; it could increase because Mary Kinsell was still alive from the time of the writing of the will until sometime subsequent to the death of the testatrix; and it could decrease, since members of this group were not to possess vested interests until the death of the life tenant. (3 Page on Wills [1941], § 1052, p. 216.) Thus, Jarman's definition of a class gift is more than

satisfied: 'an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.' (1 Jarman on Wills [7th ed., 1930], p. 310.)

"This definition of a class gift is 'widely quoted in American cases,' (2 Simes & Smith, The Law of Future Interests [2d ed., 1956], § 615, p. 54) as well as in California decisions (*Estate of Murphy* (1909), 157 Cal. 63, 67 [106 P. 230, 137 Am. St. Rep. 110]; *Estate of Henderson* (1911), 161 Cal. 353, 360 [119 P. 496]; *Estate of Kelleher* (1928), 205 Cal. 757, 760 [272 P. 1060]; *Estate of Clark* (1944), 64 Cal.App. 2d 636, 641 [149 P.2d 465].)'" (Pp. 12-13.)

■ Both paragraph (7), subdivision (c), of the decree and article VII, subdivision (c), of the will fulfill the requirements of a class gift. Article VII provided for the establishment of a trust, to consist of one-third of the residue of the testatrix' property, the income from one-half of which should be paid monthly to Fred R. Doyle during his lifetime. The will provided that upon his death the "net rents, issues, profits and income" of the trust estate be paid to the "issue" of Fred R. Doyle "subject to the same trusts and conditions" as set forth in subdivision (b) of the will. The use of the general term "issue" rather than a specific designation by name of the beneficiaries indicates both the testatrix' intent to benefit a designated group of persons as well as the testatrix' recognition of the possibility of fluctuation in the size of that group. Consequently, the testatrix bequeathed an aggregate sum to a group of indefinite size, the amount of each share and the number of shares to be determined at a future time. In this case that future time, that is, the time for possession of the gift, was the death of her son.

■ The class designated by the testatrix and the decree included appellant. Section 123 of the Probate Code defines generally the members of a class, as follows: "A testamentary disposition to a class includes every person answering the description at the testator's death; but when the possession is postponed to a future period, it includes also all persons coming within the description before the time to which possession is postponed. A child conceived before but born after a testator's death, or any other period, when a disposition to a class vests in right or in possession, takes, if answering to the description of the class." Simes and Smith, The Law of

Future Interests, (2d ed., 1956), states the general rule in section 640, as follows: "Where a gift to a class is postponed, so far as distribution is concerned, until the termination of a prior life estate, it is clear that the general rule would permit the class to increase until the end of the life estate." (Pp. 78-79.)

Appellant was born after the testatrix' death but before the termination of her father's life estate. In the terms of section 123 of the Probate Code, since the "possession" of the gift was "postponed" until the death of Fred R. Doyle, the class included "all persons coming within the description [issue] before the time to which possession . . . [was] postponed." Consequently, appellant, as an issue of Fred R. Doyle, born before the date of possession, Fred R. Doyle's death, becomes a member of the class designated in subdivision (c) of the will and subdivision (c) of the decree.

We do not believe that the 1927 decree annulled appellant's potential rights under the will.　　While we realize that a decree of distribution, once final, establishes the rights of interested persons, even if erroneous and contrary to the terms of the will (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 545 [7 Cal.Rptr. 124, 354 P.2d 652]; *Estate of Loring* (1946) 29 Cal.2d 423, 427, 432 [175 P.2d 524]; 4 Witkin, Summary of Cal. Law, § 297, pp. 3283-3284), we do not find the 1927 decree to be incompatible with appellant's asserted rights or to conflict with the will.

　　While the will designates the "issue" of Fred R. Doyle as the recipients of the property composing one-half of the residuary trust in subdivision (b), the decree in its subdivision (b) names the six children of Fred R. Doyle living at the time of the decree. On the other hand, both the will and the decree, in their respective subdivisions (c), use the general term "issue" as to the disposition of the trust property included in the trust established for the lifetime of Fred R. Doyle. The only difference between the two subdivisions lies in their references back to the preceding subdivisions: the will refers back to subdivision (b) which employs the term "issue"; the decree refers back to its subdivision (b) which specifically names the recipients.

According to respondents, the difference in the subdivisions, coupled with the legal priority given the final decree, can only mean that the sole recipients of benefits under subdivision (c) are those six children named in subdivision (b). Yet subdivisions (c) in both the will and the decree designate the

"issue" as beneficiaries "subject to the same trusts and conditions" as set forth in subdivision (b). We do not read such "trusts and conditions" as embracive of the portion of the subdivision designating the six recipients of benefits under subdivision (b). We believe, instead, the words relate to those provisions which describe the accumulation of funds for minors, distribution to those attaining majority, and distribution in case of the death of any of the children either as minors or after reaching majority.

Furthermore, the structure and language of the decree indicate that the probate court intended to include afterborn children in the remainder distribution under paragraph (7), subdivision (c). Subdivision (c) is the only subdivision in which the court did not refer to the six living children of Fred R. Doyle as recipients of benefits; likewise, it is the only provision which refers to the remainder gift and designates the "issue" as beneficiaries. This differentiation itself demonstrates the court's intention to distinguish between the named income beneficiaries and the class of remainder beneficiaries. We, therefore, conclude that the decree not only did not foreclose appellant's rights, as argued by respondents, but affirmatively provided for distribution of a share of the corpus of the trust to appellant.

Nor do we believe, as respondents contend, that subdivisions (d) and (e) of the decree require a finding that the six named individuals constitute "issue" as the term is used in the gift in controversy. Turning first to subdivision (e) of the decree, we note that it provides that the trusts "shall in no event continue after the death of the last survivor of the following named persons: . . . [the six children living at the death of the testatrix]." The corresponding provision of the will (subd. (e)), however, states that the trusts shall not "continue after the death of the last survivor" of Fred R. Doyle "and his issue *living at the time of my death.*" (Emphasis added.) This last designation of the will differs from that found in its subdivision (c), which refers to "the issue of my son Fred R. Doyle" without limiting the description to those living at the testatrix' death. Thus the construction of the words "issue living at the time of my death" does not apply to the construction of the term "issue," which has, moreover, been used in a different context.

Subdivision (d) of the decree provides that "[w]hen each one of the issue of the said FRED R. DOYLE, *being the children hereinabove named,* shall respectively attain the age of thirty

years, there shall . . . be paid to such one, his or her equal share of the trust estate. . . ." (Emphasis added.) The parallel provision of the will refers to "issue" without definition. This portion of the decree provides for the distribution of the corpus of the immediate gift and is not applicable to the gift of the remainder except to the extent that the remainder gift is subject to the same trusts and conditions of the provisions of paragraph (b). We have previously discussed the limited application of the designation "trusts and conditions."

Finally, we turn to respondents' contention that the clarity of the decree compels a construction that appellant be excluded as a beneficiary. As we have stated, a reasonable interpretation of the decree would support appellant's claim. On the other hand, respondents argue emphatically that subdivision (c) of paragraph (7) includes only the six children named in subdivision (b). Yet, at the most, these diverse interpretations of the decree in themselves signify an ambiguity in it. Even if we assume that the court inadvertently used the term "issue" in subdivision (c) of paragraph (7) of the decree, and actually intended the beneficiaries under that paragraph to be the same six children as those named in subdivision (b), we do not find that the wording of the decree conclusively requires that result. At the most the language shows that the court might have intended either meaning.

In the event of such uncertainty in the decree, the cases uniformly hold that the appellate court must look to the terms of the underlying will to interpret the decree and to determine the true intent of the testator. (*Fraser* v. *Carman-Ryles* (1937) 8 Cal.2d 143, 146 [64 P.2d 397]; *Estate of Freeman* (1956) 146 Cal.App.2d 49, 57 [303 P.2d 609]; *Lloyd* v. *First Nat. T. & S. Bank* (1951) 101 Cal.App.2d 579, 582 [225 P.2d 962]; *Clark* v. *Capital Nat. Bank* (1949) 91 Cal.App.2d 865, 869 [206 P.2d 16]; 4 Witkin, Summary of Cal. Law, § 298, pp. 3284, 3285.)

The true intent of the testatrix finds expression in the will. Rather than insert a provision for the specific children living at the time when she drew the will, she made a gift to the "issue" of her son. She thus indicated her awareness of the possibility that her son might have more children; she recorded her desire to provide for them equally with his living children. The will discloses a basic plan and intent to provide a class gift for the benefit of all the issue of the testatrix'

son. The decree does not compel us to thwart that intent; indeed, one interpretation of the decree supports that construction of it, but, at best, the decree is ambiguous, and we can turn to the will to resolve the uncertainty. We would reach an arbitrary result if we permitted a decree, which under the most favorable construction is uncertain, to exclude a sibling claimant from sharing with her brothers and sisters an inheritance clearly intended for her by the class gift of the will. We would allow the decree's possible ambiguity to shatter the concrete manifestation of the decedent's intent.

The order determining persons to whom the trust estate passed upon termination, and directing the delivery of said assets in equal shares to Evelyn Doyle Basso, Lucy Doyle Hadaway, Zelma Doyle, Meldrum Doyle, Edward R. Doyle and Walter J. Doyle is amended to include Sally Lou Doyle Woodring, and as so amended is affirmed.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied May 14, 1962, and respondents' petitions for a hearing by the Supreme Court were denied June 13, 1962. Schauer, J., was of the opinion that the petition should be granted.